## Commonwealth v. Kotch

Before Aponick, P. J., Flannery and Brominski, JJ.

*Stephen A. Teller*, District Attorney, for Commonwealth.

*Joseph V. Kasper* and *Thomas E. Mack*, for defendant.

FLANNERY, J., July 6, 1960.—On January 15, 1960, at approximately 5 p.m., Natalie Kotch was shot to death in her home in Larksville and her father who was alone with her at the time was immediately taken into custody. He was interrogated, examined medically and on the next day, January 16, 1960, was taken before a magistrate, formally charged with the

crime of murder and remanded. On March 8, 1960, he was indicted for murder by the grand jury.

On April 21, 1960, defendant by his counsel obtained a rule on the district attorney to show cause why he should not be allowed an "inspection of the tangible objects, the results of the medical tests and the recorded examination".

To the petition for the rule the district attorney filed a responsive answer and some abortive depositions were taken. These are of little help but in any event are inconsequential.

The district attorney at the argument and in his brief agrees:

"1. To exhibit to counsel for defendant the revolver alleged to have been used in the homicide, and the shells found at the residence of the defendant, the same to be examined at the District Attorney's office, in the presence of the District Attorney or his representative.

"2. To furnish to counsel for defendant a copy of the report of Commonwealth's ballistics expert, Lt. E. H. Crowthers, of the State Police Laboratories.

"3. To furnish to counsel for defendant a copy of the report of Edward J. Pugh, chemist and bacteriologist, of his analyses of the samples of defendant's blood and urine taken on the night of January 15, 1960."

But he refuses to turn over to defendant a transcript of the interrogation which was made by Court Stenographer William Lewis unless required to do so by the court, and whether or not defendant is entitled to this is the sole question before us.

As recently as 1955 the Pennsylvania Supreme Court in Commonwealth v. Wable, 382 Pa. 80, 86, speaking through Chief Justice Stern said: " 'The general rule is that the accused has no right to the inspection or disclosure before trial of evidence in the

possession of the prosecution': 2 Wharton's Criminal Evidence, 1131, 1312, 1354", and the cases from many jurisdictions relied on there. But the rule was qualified in the case of DiJoseph Petition, 394 Pa. 19, in which the court recognized the rule in principle but approved extensive disclosure directed by the lower court holding:

". . . The matter of permitting a defendant to examine and inspect evidence in the keeping of the Commonwealth depends upon an exercise of judicial discretion in any instance and our trial courts can be trusted to exercise it wisely": Page 23.

The court among the authorities there relied upon, cited State v. Cicenia, 6 N. J. 296, 78 A. 2d 568, as a leading case on the subject. The charge there was murder and defendant applied to inspect his confession. Chief Justice Vanderbilt for the New Jersey Supreme Court held that the matter rested in the sound discretion of the trial court. But it is important to note that the disclosure sought was not required. And such seems to be the general practice in that State: State v. Tune, 17 N. J. 100, 110 A. 2d 99, murder, defendant's request to inspect his own confession before trial declined; State v. Johnson, 49 N. J. Super. 288, 139 A. 2d 468, murder, defendants denied inspection of their confessions and of statements made by others.

The principles under discussion may be found in Wigmore, 3rd Ed. vol. 6, §1850, et seq. and the consensus would seem to hold as does the Supreme Court of this State that the matter rests in the sound discretion of the trial court to be exercised so as to further the ends of justice, to be exercised in such a way that the right to a fair trial shall be inviolate. Some of the authorities in refusing disclosure do so on the theory they are protecting the public welfare against its assailants which they hold to be the ultimate goal

of our society. This is no argument against disclosure. A fair trial is the one sure insurance of public welfare and disclosure of evidence to defendant or the denial of such disclosure becomes right and just only as it contributes to that end. It must be borne in mind that in the administration of justice we still adhere to the adversary system and, to be fair, a trial must not sacrifice the rights of the public to extend a privilege to the accused, nor may it sacrifice the rights of the accused to satisfy public vengence or official zeal.

We shall endeavor to dispose of the question here in line with the law as it has evolved from a long experience and is now defined by the Supreme Court.

The district attorney has offered to defendant all of the evidence in his possession except the transcript of the interrogation. This counsel contend is not enough.

According to the petition for the rule the examination was made while he was "confused, ill, physically exhausted and in a state of shock". Further it is averred:

"6. That by reason of the aforesaid Defendant is unable to inform his counsel as to what statements he made and as to what statements the Court reporter recorded because he cannot clearly recall the events or circumstances surrounding the death of his daughter, the arrest, the examination and the recorded statement."

Since defendant cannot clearly recall the events of the tragedy, his counsel argue they are seriously handicapped and require this transcript, as they contend, in order to prepare the defense. But what that defense is they do not indicate nor is the need spelled out.

It seems to us that a defendant who has no clear recollection of the events of a homicide to which there were no witnesses is without standing to demand the disclosure of his interrogation "in preparation for

trial". If it is helpful to him he cannot complain; if it is incriminating he cannot deny it.

In short, there has been shown neither significant fact nor logical reason why this transcript of interrogation is needed to prepare the defense and whether it be innocuous or incriminating we can discover no rights of defendant that will be compromised by our refusal of his petition for such disclosure.

We believe the question here falls within the general area of the DiJoseph case, supra, in which the court refused to require defendant to disclose the fingerprints on the gun, and the Cicenia case, supra, in which the New Jersey court refused to require the disclosure of the confession. We believe the district attorney in affording defendant the weapon, the shells, the blood and urine tests, etc., has been fair and cooperative. Beyond that we will not compel him to go.

Wherefore, now July 6, 1960, at 9:30 a.m., the rule is discharged and the prayer of the petition to require disclosure of the recorded and transcribed interview is refused.