Commonwealth *v.* Linkowski, Appellant.

Argued November 22, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Emanuel Weiss,* for appellant.

*John P. Wanner,* First Assistant District Attorney, with him *John E. Ruth,* District Attorney, for appellee.

OPINION BY MR. JUSTICE PATTERSON, January 3, 1950:

Frank S. Linkowski, appellant, was indicted and tried for the murder of Frank Zabczyk. The jury returned a verdict of voluntary manslaughter. Appellant moved in arrest of judgment and for a new trial. These motions were refused, sentence imposed, and this appeal followed.

Between midnight and one o'clock on the morning of September 15, 1947, appellant and Zabczyk engaged in a fight in the social room of a private club, known as the Polish Falcons, located at Bingaman and Spring Garden Streets, in the City of Reading. They were separated by others present and Zabczyk was put out of the club-room, but he returned shortly and appellant invited him to "go outside and straighten this out now", whereupon the two men left the club to settle their differences. Fifteen minutes later Zabczyk reappeared in the club-room, with skinned knuckles, stating that he and appellant had settled the matter and that he had asked appellant "to come in and have a beer and forget about it", but appellant said he was going home. At about 2:50 a.m., Zabczyk was shot in the back as he stood at the bar of the club-room, with his back towards an open window which faces on Spring Garden Street. He was removed to a hospital where he died within a half-hour of the shooting. Appellant was taken into custody about an hour after the shooting, at his home, located four and one-half city blocks from the club, where he was found asleep in his bedroom on the second floor. Appellant's face was badly bruised as a result of his fight with Zabczyk and in a closet of his bedroom were found a supply of cartridges and a 1917 Enfield rifle from which, according to the testimony of the Commonwealth's ballistics expert, the fatal shot was fired.

None of the Commonwealth's witnesses saw appellant from the time he left the club to settle matters with deceased until he was apprehended and taken into cus-

tody at his home. The theory of the Commonwealth was that following the fight with Zabczyk appellant went to his home for his rifle, returned to the club, and fired the fatal shot through the open window into Zabczyk's back. Appellant's defense was an alibi—that he was at his home and in bed at the time of the shooting. Both his mother and sister testified that he had not left the house after coming home, drunk and badly beaten, between 1:00 and 1:30 a.m. Appellant testified that he remembered engaging in a fight, which was continued on the outside, but did not recall the person involved, the reason for the fight, its duration, or anything that occurred from the time of the fight until he awakened in his cell the following morning, and that, remembering the fight, he thought he was in custody because of it.

Appellant contends (1) that the evidence of facts and circumstances relied on by the Commonwealth to establish his guilt was not of the character required to sustain a conviction based on circumstantial evidence; (2) that the trial judge erred in permitting the Commonwealth to plead surprise and cross-examine the witnesses Erwetowski, bartender at the Polish Falcons, and Kusnir, a patron, as to previous inconsistent statements, when they denied knowledge of facts relating to the scuffle between appellant and deceased which occurred inside the club-room; and (3) that a new trial should be awarded because it has been discovered since the trial that the Commonwealth's ballistics expert "tampered" with one of the test cartridges fired by him in making the tests upon which he based his opinion that the fatal bullet was fired from the rifle found in appellant's bedroom closet.

The court below did not err in concluding that the evidence presented a case for the jury. The Commonwealth established a motive for the killing of Zabczyk by appellant, and it is not disputed that appellant had ample time following the fight to go to his home, obtain

his rifle, return to the club, and fire the fatal shot. In addition there is the testimony of the witness Ostrowski, who lived across the street from the club, that upon hearing a shot between 2:30 and 3:00 a.m., he went to his window and saw a man, about appellant's height, stooping and looking into the club window and then walk away. According to Ostrowski, the man was wearing a light shirt and dark trousers, which corresponds with appellant's description of the clothes he was wearing on the night of the killing. This evidence, coupled with the positive testimony of the Commonwealth's ballistics expert, which stands uncontradicted by any similar evidence on behalf of appellant, was clearly sufficient to warrant a finding that appellant was the guilty party. On cross-examination by counsel for appellant, the ballistics expert, Lt. Whitecotton, official examiner of small arms and small arms ammunition for the Pennsylvania State Police, testified as follows: "Q. Are you sure that Exhibit 12 [the fatal bullet] was fired from Exhibit 14 [appellant's rifle]? A. That is my opinion. Q. I didn't ask your opinion. I am asking you whether you are sure that Exhibit 12 was fired from Exhibit 14? A. I am. Q. You are sure of this? A. Yes, sir. Q. There is no doubt about that in your mind at all? A. None. Q. You are positive of that? A. I am . . . Q. And you are also positive that Exhibit 12 could not have come from any other Enfield rifle? A. That is correct." As said in *Commonwealth v. Libonati*, 346 Pa. 504, 508, 31 A. 2d 95: "The requirement of the law is that in order to warrant a conviction the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt—not that they need be absolutely incompatible with his innocence—*and that doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'*" (Italics

supplied.) See also *Commonwealth v. Holt*, 350 Pa. 375, 387, 39 A. 2d 372; *Commonwealth v. Wentzel*, 360 Pa. 137, 143, 61 A. 2d 309.

On two occasions the trial judge permitted cross-examination of Commonwealth witnesses following a plea of surprise. In each instance, the district attorney was allowed to cross-examine on the ground that the witness had made a prior inconsistent statement to him relating to the scuffle between appellant and deceased. It is true that the procedure followed did not strictly comply with that applicable to a plea of surprise (see *Selden v. Metropolitan Life Insurance Co.*, 157 Pa. Superior Ct. 500, 43 A. 2d 571), but any error was harmless inasmuch as this testimony dealt only with the fight which, although important to supply motive, is not disputed, the real question being the identity of the slayer. The irregularity therefore affords no basis for a new trial. Mere error in the abstract is not sufficient to warrant a retrial, and where the conclusion is inescapable that the error did not influence the jury against the accused, or deprive him of his legal right to a fair trial, a new trial will not be granted. See *Commonwealth v. Barnak*, 357 Pa. 391, 423, 54 A. 2d 865; *Commonwealth v. Holley*, 358 Pa. 296, 303, 56 A. 2d 546.

The record does not support the charge that the Commonwealth's ballistics expert "tampered" with one of the test bullets. While the powder load in one of the test cartridges was reduced before firing by drilling a small hole in the cartridge case and removing some of the powder, it is not seriously questioned that this was not done for any improper purpose, as stated in the opinion of the court below, but as part of a technique of firearms cartridge comparison, and as a precautionary measure to avoid the possibility of marring the characteristic markings of the rifle barrel in the test firing.

The witness testified at length, both on direct and cross-examination, as to the method of making the tests and the findings on which he based his opinion that the fatal bullet was fired from appellant's rifle. He explained that the matching markings on the one test bullet were less vivid than on the other, that the vividness of the markings on a spent bullet depends upon the pressure exerted upon the gun barrel, and that the pressure in turn varies with the quantity of powder, age of the powder, and other circumstances. Although the test bullets and cartridge cases were in evidence, and were examined by counsel for appellant, he did not question the witness specifically as to the purpose of the hole in one of the test cartridges or as to the quantities of powder used. Now, after an unfavorable verdict, on the averment that he was not aware of the variation in powder charges at the time of the trial, counsel contends that another trial should be awarded on the ground that Lt. Whitecotton may have based his opinion solely on a comparison of the fatal bullet and the test bullet fired with a diminished powder charge, and that if this had been argued to the jury, it may have created the necessary doubt in their minds. This contention assumes, erroneously, that the opinion of the witness was based on a comparison of the markings on the fatal bullet with the markings on one of the test bullets only. The witness testified to the contrary, stating that his conclusion was reached after an examination of all three bullets, i.e., the fatal bullet and *both* test bullets, and that while the matching markings were not as distinct on the one test bullet as on the other, similar characteristic markings appeared on all three bullets. In any case, it is well settled that after-discovered evidence offered only to impeach the credibility of a witness furnishes no sufficient reason for a new trial: *Commonwealth v. Elliott,* 292 Pa. 16, 24, 140 A. 537; *Common-*

*wealth v. Kostan,* 349 Pa. 560, 567, 37 A. 2d 606; *Commonwealth v. Green,* 358 Pa. 192, 198, 56 A. 2d 95.

The case is free from reversible error. As stated in the brief for the Commonwealth, "The record in this case clearly points to the guilt of the accused. He was fortunate that he was not convicted of a higher degree of felonious homicide."

Judgment and sentence affirmed.