## Commonwealth *v.* Wable, Appellant.

Argued April 18, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*A. C. Scales*, with him *Richard B. McCormick* and *B. Patrick Costello*, for appellant.

*Joseph M. Loughran*, Assistant District Attorney, *L. Alexander Sculco*, District Attorney, and *John K. Best*, Assistant District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 23, 1955:

Defendant, John Wesley Wable, 25 years of age, although of a well respected family in the community and a high school graduate, was court-martialed while in Army service and received a dishonorable discharge; thereafter he worked for some time in Cleveland but became unemployed a short time prior to the occurrences which have now resulted in his conviction of the crime of murder.

On July 25, 1953, one Lester B. Woodward, a truck driver, was murdered while asleep in the cab of his truck on the Pennsylvania Turnpike at a point in Westmoreland County. Three days later, on July 28, 1953, one Harry Franklin Pitts, likewise a truck driver, was similarly murdered while asleep in the cab of his truck at a point on the Pennsylvania Turnpike also in Westmoreland County. Three days later, on July 31, 1953, one John K. Shepard, another truck driver, was shot while asleep in the cab of his truck on a highway in Ohio at a point approximately 15 miles from the Pennsylvania Turnpike. Defendant was indicted and tried for the murder of Pitts. The jury returned a verdict of guilty of murder of the first degree and fixed the penalty at death. Defendant appeals from the judgment entered on the verdict and the sentence imposed thereon by the court.

Of the several reasons advanced by defendant in support of his appeal the principal one is that the court erroneously admitted evidence relating to the murder of Woodward and the shooting of Shepard. Apart from the fact, however, that the crimes all occurred at three day intervals and two of them in the same neighborhood, there was a striking similarity in the manner in which they were committed. Woodward and Pitts were each found lying on the seat of his

cab with his head against the door and resting on a pillow. Each had apparently been attacked in the early morning hours. In each instance the murderer had poked his gun through the door window and shot his victim in the head, death being instantaneous. In each instance the bullet had entered the head at about the same angle. In each instance the motive was evidently robbery, Woodward being actually robbed but apparently a hurried getaway in the case of Pitts prevented accomplishment of that purpose. Shepard also was robbed and the shooting in his case was practically identical in detail with the other crimes, except that he was fortunate that his wound did not result in death. What led to defendant's arrest was that a watch which had been stolen from Shepard was discovered in a pawnshop in Cleveland and found to have been pawned there by defendant. The weapon with which all the shootings had been performed was identified as belonging to defendant. He was arrested in New Mexico,[1] waived extradition, and, while returning to Pennsylvania in the custody of officers, wrote out a statement in which he admitted that he was with one "Jim Parks" on the occasions of the shootings, but he asserted that "Parks" was the man who had actually committed them; such a person as "Parks" has never been located, and, as already stated, the bullets that were fired into the three victims were shown

---

[1] Defendant makes some complaint of the fact that the Commonwealth introduced the testimony of the District Attorney of Albuquerque that defendant was arrested in New Mexico for grand larceny and that a criminal complaint was filed against him for robbing a cash register there. This testimony was merely to explain how defendant came to be identified and apprehended and was admissible for that purpose: *Commonwealth v. Robinson*, 163 Pa. Superior Ct. 16, 22, 23, 60 A. 2d 824, 827; *Commonwealth v. Biancone*, 175 Pa. Superior Ct. 6, 9, 102 A. 2d 199, 201.

to have been fired from defendant's gun. Shepard testified that defendant, whom he positively identified, was on the scene and accosted him as he recovered consciousness after he was shot.

It is true, of course, that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime, because the fact of the commission of one offense is not proof of the commission of another. Indeed, this was said, in *Commonwealth v. Burdell*, 380 Pa. 43, 47, 110 A. 2d 193, 195, to be "One of our most fundamental and prized principles in the administration of criminal law. . . ." But it is also true that sometimes there exist the "special circumstances" which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. A veritable multitude of authorities in our appellate courts enunciate, albeit in varying language, this familiar principle.[2]

---

[2] For example: *Commonwealth v. Coles*, 265 Pa. 362, 366, 367, 108 A. 826, 827; *Commonwealth v. Weiss*, 284 Pa. 105, 109, 110, 130 A. 403, 404; *Commonwealth v. Bell*, 288 Pa. 29, 34, 135 A. 645, 647; *Commonwealth v. Parker*, 294 Pa. 144, 151, 143 A. 904, 906; *Commonwealth v. Chalfa*, 313 Pa. 175, 177-179, 169 A. 564, 565, 566; *Commonwealth v. Strantz*, 328 Pa. 33, 195 A. 75, 81; *Commonwealth v. Fugmann*, 330 Pa. 4, 20-22, 198 A. 99, 107, 108; *Commonwealth v. Brooks*, 355 Pa. 551, 553, 50 A. 2d 325, 326, 327; *Commonwealth*

It would seem too clear for discussion that the circumstances surrounding the murders of Woodward and Pitts and the shooting of Shepard brought the present trial within the compass of the exceptions to the general rule. It having appeared that defendant had been involved in the shooting of Shepard and that the same gun had been used in the commission of the other two crimes; that the gun belonged to defendant; that, by his own admission, he was at least present with "Parks" on the occasions of all three of the shootings; that they all evidently had robbery for their motive; and that there was an almost uncanny similarity in all the details of their perpetration;— in the light of such a concatenation of circumstances it would be difficult to conceive of a clearer example of crimes committed in the course of a common scheme, plan, or design. The court certainly committed no error, therefore, in the admission of the testimony relating to the murder of Woodward and the shooting of Shepard.

Defendant complains that his ballistic expert was not afforded a sufficient opportunity to examine the gun and bullets allegedly employed in the shootings, although his counsel, after the impaneling of the jury

---

v. *Kline*, 361 Pa. 434, 438, 439, 65 A. 2d 348, 349; *Commonwealth v. Darcy*, 362 Pa. 259, 281, 282, 66 A. 2d 663, 674, 675; *Commonwealth v. Hutchinson*, 6 Pa. Superior Ct. 405, 410, 411; *Commonwealth v. Weaver*, 61 Pa. Superior Ct. 571, 577, 578; *Commonwealth v. Elias and Johns*, 76 Pa. Superior Ct. 576, 579, 580; *Commonwealth v. Bell*, 88 Pa. Superior Ct. 216, 223, 224; *Commonwealth v. Flick*, 97 Pa. Superior Ct. 169, 174, 175; *Commonwealth v. Huster*, 118 Pa. Superior Ct. 24, 31, 178 A. 535, 537; *Commonwealth v. Mezick*, 147 Pa. Superior Ct. 410, 420, 24 A. 2d 762, 767; *Commonwealth v. Krolak*, 164 Pa. Superior Ct. 288, 290, 64 A. 2d 522, 523, 524; *Commonwealth v. Thurman*, 167 Pa. Superior Ct. 642, 646, 76 A. 2d 483, 484, 485; *Commonwealth v. Gusciora*, 169 Pa. Superior Ct. 27, 33, 82 A. 2d 540, 542, 543; *Commonwealth v. Ransom*, 169 Pa. Superior Ct. 306, 314, 315, 82 A. 2d 547, 551.

had commenced, petitioned the court for an order directing the District Attorney to permit the making of such an examination. It appears, however, that defendant's expert did examine these exhibits at the counsel table. The gun and the bullets had been at all times in the custody of the police, and the District Attorney had no control or authority to compel their surrender for such an inspection, although, in response to his request, the Commissioner of State Police produced them in court. The defense did not call its expert to the stand. We find no merit in this complaint of defendant.

The Commonwealth had engaged two psychiatrists to examine defendant in order to ascertain whether he was sane and capable of standing trial. Counsel for defendant also had defendant examined by psychiatrists but complains that he was refused information as to what the report of the Commonwealth's experts disclosed. He presented a petition for that purpose during the progess of the trial but before the District Attorney's office had received a written report from its experts as to the result of their examination. No question of defendant's sanity was raised at the trial, so that, at best, the matter complained of was of no real importance. Moreover, there is, to say the least, grave doubt as to whether a District Attorney is obliged to allow a defendant or his counsel the right to inspect reports from investigators or experts in the possession of the District Attorney, or to obtain information in regard to the latter's interviews with prospective witnesses, prior to disclosure thereof at the trial. "The general rule is that the accused has no right to the inspection or disclosure before trial of evidence in the possession of the prosecution": 2 *Wharton's Criminal Evidence,* 1311, 1312, 1354 (citing cases from many jurisdictions). See also *Common-*

*wealth v. McQuiston,* 56 D. & C. 533; *Commonwealth v. Smith,* 67 D. & C. 598.

One of defendant's witnesses, Eugene Weber, called to establish an alibi, testified that "It is very possible I did see him [the defendant] the last week of July", but he admitted that he could not state the exact date. The Commonwealth objected to this testimony on the ground that it did not specifically refer to July 28th, the day when the Pitts murder was committed. However, after the noon recess of the court, Weber testified definitely that he saw defendant on the morning of July 28th, claiming that he now fixed the date by a newspaper article concerning the murder which he remembered reading. The District Attorney, in his closing address to the jury, called their attention to the fact that Weber, unable to fix the date before the recess, had overcome that difficulty during the recess. The defense claims that this was a prejudicial remark since it implied that the witness had been coached. The District Attorney however, merely stated what was a fact, nor did it carry any such necessary implication. Moreover, no objection was made at the time, nor was the remark noted upon the record.

A careful reading of the testimony leads to the conclusion that the jury was well justified in finding that defendant was the person who committed these outrageous, deliberate and brutal crimes. The trial was fair, impartial, and conducted by the court with painstaking and meticulous regard for all of defendant's legal rights.

Judgment and sentence affirmed.