## DiJoseph Petition.

Argued October 3, 1958.  Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*J. William Ditter, Jr.,* First Assistant District Attorney, with him *Bernard E. DiJoseph,* District Attorney, for petitioner.

*Samuel Strauss,* with him *P. Richard Thomas,* for Pennsylvania District Attorneys' Association, amicus curiae.

*William L. O'Hey, Jr.,* with him *Henderson, Wetherhill & O'Hey,* for Ethel Kravitz, intervenor.

*Thomas D. McBride,* Attorney General, as amicus curiae.

OPINION PER CURIAM, October 16, 1958:

A majority of the court is of the opinion that the District Attorney should not be required to make available before trial for examination and inspection by Ethel Kravitz and her counsel photographs of fingerprints, if any, in the possession of the District Attorney. The order of the court below is amended accordingly.

Order amended; rule discharged and writ of prohibition refused.

CONCURRING OPINION BY MR. CHIEF JUSTICE JONES:

It is the rule in this State that a defendant in a criminal case has no absolute right to examine and inspect, prior to trial, evidence in the possession of the Commonwealth. Counsel for the present accused so conceded at bar and the Attorney General, as *amicus curiae,* so argued both orally and by brief. However, a trial court having jurisdiction of an alleged offender possesses discretionary power to permit a defendant, in appropriate circumstances, to examine and inspect in advance of trial physical or documentary evidence in the hands of the prosecution. And, this court's current action so confirms. Also, see our opinion in *Commonwealth v. Hoban et al.,* 54 Lackawanna Jurist 213, 218 (not reported in the official State Reports).

In the *Hoban* case, we said with respect to the question of an accused being allowed to examine and inspect before trial evidence in the possession of the prosecution ". . . the better view is that expressed in the case of State v. Cicenia, 6 N. J. 296, 78 A. 2d 568". In that case, the Supreme Court of New Jersey quoted with approval from the thorough and well-considered opinion of Chief Judge MARBURY of the Court of Appeals of Maryland in *State v. Haas,* 188 Md. 63, 75-76, 51 A. 2d 647, as follows: "There can be no doubt that the recognition of the right in a trial court to permit the defendant to examine his confession in advance of the trial was not recognized at common law. But law is a growth and a great many matters, commonplace to us now, were not thought of many years ago. . . [T]he tendency in the courts of this country is to permit discretion in the trial judge. The argument made against any such discretion is based upon a fear that the State, which is charged with the prosecution of crime, may be hampered in its duty by the disclosure of its evidence to those charged with offenses. What

ever merit that argument has as applied to a situation where it is contended that the accused has a *right* to inspect the evidence, it has no application, we think, to a situation where the trial judge in each case and on each application, determines what should be done in the interest of justice. There are cases in which it would be clearly unjust to deny such an application and, on the other hand, cases are conceivable in which it might improperly hamper the prosecution to grant such an application. We do not understand that the court below decided that the appellees were entitled to this disclosure as a matter of right."

Likewise in the instant case, the trial court did not hold that the petitioning defendant was entitled *as a matter of right* to the disclosure ordered. And, this court in its *pro tanto* approval of the order entered by the court below is not laying down a new rule. Chief Justice STERN'S quotation in *Commonwealth v. Wable,* 382 Pa. 80, 86, 114 A. 2d 334, from Wharton's Criminal Evidence that " 'The general rule is that the accused has no right to the inspection or disclosure before trial of evidence in the possession of the prosecution' " continues to be the rule in Pennsylvania. The matter of permitting a defendant to examine and inspect evidence in the keeping of the Commonwealth depends upon an exercise of judicial discretion in any instance and our trial courts can be trusted to exercise it wisely. The justification for the discretion so reposed lies, in part, in the concept expressed by Judge HOBAN in *Commonwealth v. Stepper,* 54 Lackawanna Jurist 205, 212-213,—"We would rather remove any obstacle to a fair trial, before the trial, rather than have it removed later and double the expense of difficult and protracted proceedings to the Commonwealth." Like the court in *State v. Haas,* supra, "We are not impressed by the fear of the prosecuting attor-

neys that the exercise of such discretion will change the whole practice of criminal law in this State, or will make the securing of proper convictions more difficult to obtain. It has not apparently had that effect elsewhere and we see no reason why it should have it here."

The only question before us, then, just as in the *Hoban* case, is whether the court below properly exercised its discretion. The court *en banc,* composed of the four judges of the Court of Common Pleas of Montgomery County, after reciting that it had reviewed all the evidence at its command, unanimously concluded that ". . . the Commonwealth has impeded and hampered defense counsel's investigation and preparation for trial by unrestrained and arbitrary power without fair co-operation and is therefore depriving the accused of that due process of law commanded by the 14th Amendment to the Constitution of the United States." Neither the record, the printed briefs, nor the oral argument has presented anything that would justify us in holding that the foregoing considered conclusion of the court below was false. Consequently, it necessarily follows that the court below, acting for the purpose of vitiating the indicated harm, exercised a sound discretion by the entry of its order as restricted by the limitation now put upon it by this court.

For my own part, I would have refused the writ of prohibition, for which the district attorney has petitioned, without imposing on the order of the court below the limitation with respect to the photographs of fingerprints, if any, in the hands of the district attorney.

---

CONCURRING OPINION BY MR. JUSTICE MUSMANNO:

I concur in the order entered by the majority of this Court. I believe that a person who asserts his

innocence of a crime of which he stands accused is entitled to examine prosecution exhibits which are reasonably associated with the theory of guilt and of which he probably may be unaware. However, where an exhibit is one of which the accused is entirely cognizant and *already knows* whether it could or could not be an item of incrimination against him, he is not entitled to its inspection if such inspection would hamper the Commonwealth in proceeding with its case.

The Commonwealth here has in its possession a 32 calibre revolver which, it avers, was the weapon used in the killing of Max Kravitz. The accused, Mrs. Ethel Kravitz, petitioned the Court of Common Pleas of Montgomery County to be allowed to inspect this weapon, as well as to study the photographs of fingerprints, if any, found on the weapon at the time it was discovered in a culvert along a route admittedly followed by the accused after the killing of Max Kravitz. The lower Court ordered the District Attorney to allow inspection of the revolver and the photographs of any markings on the weapon when recovered.

We have affirmed the action of the lower Court with regard to inspection of the weapon but have refused to the defendant an inspection of the photographs of fingerprints, if any. I believe this action to be eminently just and in no way handicaps the defendant in the preparation of her case. She is one person who knows whether she used the weapon or not and, therefore, she is not being denied anything which she needs in the ascertainment of truth.

For the Commonwealth to be required to submit to the accused evidence of possible markings on the revolver could quite possibly trammel the prosecution. I endorse heartily the quotation in Chief Justice JONES' concurring opinion from the case of *State v. Haas,* 188 Md. 63, namely, "There are cases in which

it would be clearly unjust to deny such an application [for inspection of evidence] and on the other hand, cases are conceivable in which it might improperly hamper the prosecution to grant such an application."

I believe the prosecution here might find itself impeded in preparing for trial if it were required to announce to the world what it found on the 38 calibre revolver discovered in the culvert. It would appear that Max Kravitz' death was the result of criminal aggression, and all law-enforcing agencies should be aided rather than restricted in attempts made to ascertain the identity of the malefactor, if there is one, and to bring that person to justice.

The scales of justice are weighted in favor of the accused, as they should be, because nothing can be more destructive of faith in the law than the conviction of an innocent man. This does not mean, however, that the prosecution should be manacled in its honest endeavor to uphold the law and safeguard society from violence. Such a fettering is not to adjust the scales of justice but to destroy them.

The Attorney General of the Commonwealth, arguing in support of the decision of the court below, asserted, *inter alia,* that an accused is entitled to examine everything that the Commonwealth may have gathered in preparing its case against the defendant. If such a rule were to govern in every case, society could suffer in its efforts to reduce crime and prevent violence.

While the Attorney General, in my belief, went too far in asserting what the accused is entitled to, as against the rights of society in a legitimate and vigorous prosecution of crime, I am constrained to say, with every deference, that my brother BELL travels an equally unwarranted distance in the opposite direction. In his dissenting opinion he says: "The present order goes further than this Court or, we believe, the Su-

preme Court of the United States, has ever gone. It permits fishing expeditions by a defendant; it sets a precedent which will make fabrication of defenses easy, and consequently (although of course unintentionally), it will make the protection of society and the conviction of dangerous criminals far more difficult than ever before."

This paints a picture too dusky, dismal, and dreary for my eyes. It carries a pigmentation of too much alarm and foreboding, not justified by the decision of the Court. It is true that persons accused of crime have the possibility of fabricating evidence, as Justice BELL points out, but this, unfortunately, is always within the realm of possibility, regardless of what a district attorney may or may not do, with or without specific authorization by a court. In painting his picture, I fear that my brother employs a brush too heavy for the objects he intends to depict. As a consequence, in his descriptive picture, the accused person before trial and the accused person after conviction merge into one amorphous concept. But an indicted person does not become a criminal until and unless the jury finds him guilty. Thus, to say that the action of this Court today will make "the conviction of dangerous criminals far more difficult than ever before" is to place effect before cause and sequence in front of prelude.

As against brother BELL's lurid canvas, I would like to invite interest in a much more gratifying scene, that of a courtroom with trial judges learned in the law and experienced in the ways of life, listening attentively to what is being said, weighing carefully what is being presented, and then impartially deciding whether an accused is entitled under the Constitution, to certain privileges for which he makes a formal request, after due notice to the officials charged with

prosecution. With such a procedure, society will be protected, the accused's rights will be safeguarded, and the law will assert itself with dignity, majesty, and propriety.

I am satisfied from a reading of the record that the judges of Montgomery County did not move impetuously, nor did they act without thorough consideration of all features of the case. I am also satisfied that the decision reached by them coincides with the highest standards of absolute impartiality. That I do not agree with one of their conclusions, as already stated, in no way detracts from my spontaneous and wholehearted commendation of their courageous and deliberate action in the proceedings.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent from the Majority's order which requires the Commonwealth to make available to this defendant before trial, the gun which the Commonwealth alleges is the gun used in the murder, defendant's bloodstained clothing, photographs of their bedroom which was the scene of the crime, and articles of bedroom furniture which were seized by the police. This disastrous precedent-shattering decision breaches one of the few barriers which are left to protect peaceable communities and law-abiding citizens from murderers and dangerous criminals. While the order directs the Commonwealth merely to turn over to defendant for examination before trial nearly all of its physical evidence, I believe that *the effect* of the order will be to compel the Commonwealth in the near future to turn over or disclose to a defendant in advance of trial *all* its evidence. That this is no idle fear is clearly demonstrated by the contention of the Attorney General of

Pennsylvania, who personally appeared in opposition to the trial district attorney and to the District Attorneys' Association of Pennsylvania.

The Attorney General orally argued that a criminal case was just like a civil case, and consequently the Commonwealth, in the interest of justice, should give or disclose to the defendant before trial *all* its evidence. It is difficult to imagine a more untenable argument or a more far-fetched analogy. A criminal trial is as different from a civil trial as day is from night. In civil trials there is pre-trial discovery and a *mutual* exchange of evidence. In a criminal trial the defendant does not have to inform the Commonwealth before or during trial or at any time his defense or any of his evidence; he does not have to take the witness stand and no unfavorable inference can be drawn therefrom; he can be convicted only if the Commonwealth proves his guilt beyond a reasonable doubt, which is defined to be a doubt which would restrain a reasonable man from acting in a matter of importance to himself; he is presumed to be innocent no matter how many terrible crimes he may have committed; if he has never been convicted of crime he can place in evidence his good reputation and that alone can be sufficient to justify his acquittal; and finally, he cannot be convicted unless all twelve of the jurors unanimously find him guilty beyond a reasonable doubt.

If we descend from ethereal theorism to the World of Reality, we know that if courts require the Commonwealth to inform each defendant of or permit him to examine its evidence, it will enable a person who commits a murder or a felony to devise, fabricate and manufacture his defense before trial—alibi, "blackout", insanity, self-defense, or perpetration of the crime by someone else—and determine whether he

should take the witness stand or introduce any evidence and if so, what kind. As recently as 1955, this Court in *Commonwealth v. Wable,* 382 Pa. 80, 86, 114 A. 2d 334, speaking through Chief Justice STERN, said: " 'The general rule is that the accused has no right to the inspection or disclosure before trial of evidence in the possession of the prosecution': 2 Wharton's Criminal Evidence, 1311, 1312, 1354, (citing cases from many jurisdictions)." At the very least, a defendant should be required to present exceptional circumstances and compelling reasons to justify an exception to the general rule. No such exceptional circumstances or compelling reasons were presented by the defendant in this case. Furthermore, the contention of the Attorney General flies in the teeth of and would require us to overrule *Commonwealth v. Wable* and abrogate a rule which for the protection of society has existed for centuries.

In recent years the Supreme Court of the United States and this Court, in their zeal to assure a fair trial to persons accused or convicted of crime, have, in my judgment, too often forgotten that law-abiding citizens and communities likewise possess certain fundamental inalienable rights. One of these rights is that their life and property shall be protected by the State against murderers and criminals. Justice is not a one way street—law-abiding citizens are entitled to the protection of the law, and to Justice just as much as (if not more so than) criminals.

The present order goes further than this Court or, we believe, the Supreme Court of the United States, has ever gone. It permits fishing expeditions by a defendant; it sets a precedent which will make fabrication of defenses easy, and consequently (although of course unintentionally) it will make the protection of society and the conviction of dangerous criminals far

more difficult than ever before. In the interest and for the protection of all law-abiding people in Pennsylvania I register this protest and dissent.