## Lewis, Petitioner, *v.* Lebanon Court of Common Pleas.

Argued November 11, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Alvin B. Lewis, Jr.,* District Attorney, in propria persona, with him *Joseph C. Mesics,* Assistant District Attorney, and *George E. Christianson,* First Assistant District Attorney, for petitioner.

*Maurice L. Epstein, LeRoy S. Zimmerman* and *David M. Boyd,* amicus curiae, for District Attorney's Association of Pennsylvania.

*John W. Packel* and *Melvin Dildine,* Assistant Defenders, and *Vincent J. Ziccardi,* Acting Defender, for amicus curiae, Defender Association of Philadelphia.

*Thomas A. Ehrgood,* for defendant in criminal action.

OPINION BY MR. JUSTICE JONES, December 12, 1969:

On May 25, 1968, a homicide occurred in Lebanon County and, on November 11, 1968, Arthur M. Root, Jr., was arrested and charged with the offense. Two days later, defense counsel were appointed by the court and, on December 16, 1968, a preliminary hearing was held.

At the preliminary hearing, the Commonwealth's key witness was Paul M. Stombaugh, a Special Agent for the Federal Bureau of Investigation (FBI), as-

signed as a hair and fiber examiner to the FBI Laboratory in Washington, D. C. Agent Stombaugh's testimony as to certain laboratory tests he had made presented persuasive circumstantial evidence to connect Root with the homicide. At this hearing, Stombaugh was cross-examined by defense counsel.

The defense counsel, in preparing for trial, contacted Agent Stombaugh and requested an opportunity to interview him prior to trial. The FBI, however, has a standard policy against granting such pretrial interviews without the consent of the district attorney, and, in the case at bar, the district attorney refused to give such consent. On August 22, 1969, defense counsel filed a petition in the Court of Common Pleas of Lebanon County, requesting that the district attorney be directed to permit the interview of the expert witness, Stombaugh.

After a hearing at which both defense counsel and the district attorney presented arguments on the merits of the petition, President Judge GATES issued the following Order: "AND NOW, to wit, August 27, A. D., 1969, it is the order of the court that counsel for the defendant be allowed to discuss the testimony of the witness, Special Agent Paul M. Strombaugh [sic], and that the District Attorney is enjoined not to prohibit Special Agent Strombaugh [sic] from discussing the testimony and the evidence with counsel for the defendant." The same day that this order was made, the district attorney wrote a letter to Agent Stombaugh in which, after quoting the court order, he stated that he felt that the FBI should not agree to the interview, although he did not have the power to bar such an interview.

On August 28th and 29th, the district attorney conferred with Judge GATES *in camera*. The court expressed the view that the district attorney's letter was contemptuous of the court order and informed the dis-

trict attorney that Agent Stombaugh would be barred from testifying at the trial if he did not agree to meet with defense counsel. A representative of the FBI has indicated that they construe the court order as requiring them to talk with defense counsel, and Agent Stombaugh is presently willing to have such an interview.

The instant proceeding was commenced on September 1, 1969, when the district attorney petitioned this Court for a writ of prohibition to prevent Judge GATES from enforcing his order. We granted a rule to show cause why the writ should not issue.[1]

The instant petition presents two separate questions of pretrial criminal procedure. First, we must consider to what extent and under what circumstances a district attorney may interfere with attempts by the counsel for a criminal defendant to have a pretrial interview with a prosecution witness. Second, we are asked to consider what, if any, sanctions may be imposed by the court in the event that the district attorney interferes unduly with this interview by the defense counsel.

Initially, it is important to note that these are questions of first impression before this Court.

We have, on numerous occasions, dealt with problems of the pretrial discovery by defense counsel of tangible items such as police reports, lists of the prosecution's witnesses, written statements of these witnesses, written statements of the defendant, photographs, and other items of physical evidence actually in the possession and control of the district attorney. *E.g., Commonwealth v. Caplan,* 411 Pa. 563, 192 A. 2d 894 (1963); *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963); *DiJoseph Petition,* 394 Pa. 19, 145 A. 2d 187 (1958); *Commonwealth v. Wable,* 382 Pa. 80, 114 A.

---

[1] The Attorney General of the Commonwealth has intervened in the proceeding.

2d 334 (1955). See *Pa. R. Crim. P.* 310 (adopted June 30, 1964). However, these cases and Rule 310 are applicable only to pretrial discovery and inspection and govern situations in which the district attorney is called upon to produce physical evidence which is in his control. Rule 310 was adopted to incorporate the general rule in criminal proceedings that, *in the absence of exceptional circumstances and compelling reasons,* an accused has no right to the inspection or disclosure before trial of evidence in the possession of the prosecution. *Commonwealth v. Wable,* 382 Pa. 80, 114 A. 2d 334 (1955). Thus, "discovery" in the context of criminal procedure has a much more limited scope than it does with respect to civil proceedings. *Compare Pa. R. Crim. P.* 221, 304 and 310 *with Pa. R. C. P.* 4001-25. In the case at bar, the defense counsel is not seeking to "discover" any evidence in the possession of the district attorney. Counsel is seeking the opportunity to question an expert witness for the Commonwealth in preparation for trial, and such request does not involve the production or inspection of evidence which is already in the hands of the prosecution. Discovery proceedings, under Rule 310, need only be used when counsel wishes to acquire access to evidence within the control of the district attorney. Witnesses themselves can certainly not be so classified. Accordingly, Rule 310 is inapplicable to the instant petition, as are the cases which presaged Rule 310.[2]

Generally speaking, an attorney who represents the Commonwealth in a criminal proceeding is unlike an ordinary party to an adversary proceeding. The interests of the Commonwealth do not require that a district attorney should win every case, but rather that

---

[2] We note, however, that defendant's petition does properly come within the scope of Pa. R. Crim. P. 304 as a pretrial application for relief.

justice should be done. The state has an interest in seeing that the innocent not be wrongfully punished, as well as in convicting the guilty. *See Berger v. United States,* 295 U. S. 78 (1935); *State v. Tune,* 13 N. J. 203, 98 A. 2d 881, 895 (1953) (dissenting opinion by Mr. Justice WILLIAM J. BRENNAN). In *Brady v. Maryland,* 373 U. S. 83, 87 (1963), the special function of a public prosecutor was discussed as follows: "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain; 'The United States wins its point whenever justice is done its citizens in the courts.' A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecution in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not 'the result of guile,' to use the words of the Court of Appeals." A district attorney may not suppress evidence or secrete witnesses; indeed, such conduct may constitute a denial of due process under the United States Constitution. *Giles v. Maryland,* 386 U. S. 66 (1967); *Brady v. Maryland,* 373 U. S. 83 (1963); *Alcorta v. Texas,* 355 U. S. 28 (1957); *United States ex rel. Thompson v. Dye,* 221 F. 2d 763 (3d Cir. 1955).

We are aware of no authority in the law which gives the district attorney the right, *in general,* to deny defense counsel access to the Commonwealth's witnesses. Under the ethical standards of our profession, in the absence of special circumstances to which we hereinafter allude, the consent of the district attorney should

not be necessary to insure defense counsel's right to interview a witness prior to the trial. The primary duty of a district attorney is not to convict, but to see that justice is done.[3]

It is not clear why the district attorney would prevent defense counsel from interviewing Agent Stombaugh before trial. There have been no allegations which would indicate a special need to sequester this witness, such as to protect the witness from harm, or to prevent the likelihood of subornation of perjury. On the other hand, if it is possible that Agent Stombaugh might have evidence which is favorable to the defendant, then the suppression of that evidence may well constitute a denial of due process. *Giles v. Maryland,* 386 U. S. 66 (1967). *See* Comment, *The Prosecutor's Constitutional Duty to Reveal Evidence to the Defendant,* 74 Yale L. J. 136 (1964). In *Commonwealth v. Smith,* 417 Pa. 321, 332, 208 A. 2d 219 (1965), Mr. Justice MUSMANNO, in holding that the defendant should be allowed access to a witness' prior written statements, stated: "It is simply unthinkable that in a government of the people, the government should withhold from one of the people evidence which could prove him innocent of a crime against all the people." The record reveals no reasonable justification for the position of the district attorney. The district attorney has not demonstrated that the prosecution of this defendant might be unfairly prejudiced by defense counsel's examination of this witness.

It has been vigorously urged that there is a substantial difference between affirmatively ordering a witness not to talk with defense counsel, and merely

---

[3] *Cf.* Code of Professional Responsibility, adopted by the American Bar Association in August, 1969, Canon 7 EC 7-13, DR 7-103(B)3, DR 7-109 (A) and (B). With respect to the applicability of these provisions to members of the Pennsylvania Bar, see Pa. R. C. P. 205.

advising the witness that the prosecution does not consent to the interview. We are not persuaded. In the majority of instances, as in the case at bar, the effect of the prosecutor's expressed disapproval would be to prevent defense counsel from speaking with the witness until the witness testifies at trial. This result is unsatisfactory. We are concerned with the interference by a district attorney with the *right* of a defendant to interview an otherwise willing witness. The issue is not the form which that interference takes, but rather whether it is effective. A district attorney who wishes to bar such an interview may employ one of three methods: he may hide or incarcerate the witness; he may order the witness not to speak; or he may "advise" the witness not to speak. The district attorney certainly has not adopted either of the first two methods. His choice of the third method, even though exercised in good faith, nevertheless was in error.

We are of the view that, *in the absence of an affirmative and convincing showing of exceptional circumstances or compelling reasons,* a district attorney may not interfere with the pretrial interrogation by a defense counsel of persons who may be called upon as witnesses in the case. Specifically, after a witness has stated that he is willing to talk with counsel for the defendant unless the district attorney objects, the district attorney may not, as we already indicated, relate his lack of consent to the witness. The district attorney may not interfere with or impose his preference or judgment on the defendant. In a case such as that at bar, the district attorney has no legitimate interest in preventing the witness from aiding the defendant. A public prosecutor is entrusted with an awesome duty which requires him to serve the interests of justice in every case. For this reason, a witness who may have information which is favorable to the defense must be made available to the defense. *See Giles v. Maryland,*

386 U. S. 66 (1967) ; *Brady v. Maryland,* 373 U. S. 83 (1963) ; *Alcorta v. Texas,* 355 U. S. 28 (1957) ; *Berger v. United States,* 295 U. S. 78 (1935) ; *United States ex rel. Thompson v. Dye,* 221 F. 2d 763 (3d Cir. 1955) ; *United States v. Rutkin,* 212 F. 2d 641 (3d Cir. 1954) ; *United States ex rel. Almeida v. Baldi,* 195 F. 2d 815 (3d Cir. 1952) ; *DiJoseph Petition,* 394 Pa. 19, 145 A. 2d 187 (1958). Unquestionably, we cannot force a district attorney to approve of such questioning; however, we may certainly bar him from communicating his disapproval to the witness.[4] We are not hereby saying that witnesses themselves may be compelled to speak with defense counsel prior to trial. We merely intend to prevent the prosecuting attorney from interfering with this aspect of the defendant's preparation for trial.

This particular case involves no special facts which justify interference by the district attorney. We recognize that some cases may present the likelihood that such pretrial contact between defense counsel and a willing witness[5] might not be in the best interests of securing justice. Where a district attorney can show some special circumstances, such as the probability that the witness will be or has been intimidated or otherwise induced to falsify his testimony, then justice may require that the proposed pretrial interview be had with certain safeguards or should not take place. The

---

[4] It should be noted that the passage of the Jencks Act, 18 U.S.C. §3500 (1964), is indicative of "the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis v. United States,* 384 U. S. 855, 870 (1966). *See Discovery in Federal Criminal Cases,* 33 F.R.D. 47 (1963).

[5] Naturally, a witness may not ordinarily be compelled to submit to pretrial questioning by the defendant where the witness has independently chosen not to be so questioned. Our concern in the case at bar is that such choice should, in fact, be independently made.

decision as to whether such a situation exists should properly be left to the discretion of the trial court. *See Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963); *Commonwealth v. Hoban,* 54 Lack. Jur. 213 (Pa. Supreme Ct. 1952). Under proper circumstances the trial court may, in its discretion and upon stated grounds for such drastic action, make such order as it should deem necessary in the individual case. Thus, a trial court may bar defense counsel from approaching a witness before trial, require that the district attorney be present during questioning, limit the questioning to specified subjects, or otherwise fashion a remedy which it deems proper under the totality of circumstances surrounding the case.

In view of our conclusion, we do not reach the question of sanctions.

Rule to show cause why a writ of prohibition should not issue is discharged.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Counsel for defendant (who was charged with homicide) had cross-examined the FBI witness, and now wishes to go on what he admits is a fishing expedition. This is objected to by the District Attorney and by the Attorney General* of Pennsylvania, who entered an appearance amicus curiae "in support of petitioner" (the District Attorney). Under these circumstances, it is against the standard policy of the FBI to grant such a pretrial interview. Under *all* of the aforesaid facts, I would preserve and protect the carefully established policy of the FBI, which is the most highly valued arm of our Government in the field of crime prevention and detection, and is vitally important to the protection and welfare of our Country.

For these reasons, I dissent.

---

* The position of the Attorney General, who joins the District Attorney, is not mentioned by the Majority Opinion, and the FBI is equated sub silentio with any ordinary witness.