Commonwealth *v.* Stafford, Appellant.

Argued November 24, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Richard W. Rogers,* for appellant.

*William T. Nicholas,* Executive Assistant District Attorney, with him *Stewart J. Greenleaf,* Assistant District Attorney, *Parker H. Wilson,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, January 19, 1973:

On March 11, 1968, Concezio Cane was accosted by four individuals and repeatedly stabbed; he died with-

in several hours. Appellant was subsequently arrested and indicted for murder and conspiracy to commit murder. Tried separately before a jury, appellant was convicted of murder in the first degree as well as conspiracy to commit murder and was sentenced to death. Following disposition of post-trial motions by a court en banc, this appeal was taken.

Due to the great number of contentions advanced by appellant, we will discuss only those facts necessary for a complete understanding of each argument at the appropriate time.

Appellant first argues that the court below erred in granting the Commonwealth's plea of surprise. During the course of the trial, appellant called William Brown, the bartender at the Norris Tavern where the appellant allegedly was drinking prior to the homicide. On direct examination by the defense, Mr. Brown testified that appellant was not present in the Norris Tavern on the night in question. Attempting to rebut Mr. Brown's testimony, the Commonwealth called Betty Gary in reliance upon her pretrial, sworn statement in which she specified that appellant was present at the Norris Tavern. However, once on the stand, Miss Gary testified that she was, "not too sure that I did or not [see the appellant]." Over defense objection, the court below granted the Commonwealth's plea of surprise and the Commonwealth proceeded to cross-examine its own witness.

We recently discussed this area of the law in *Com. v. Knudsen*, 443 Pa. 412, 278 A. 2d 881 (1971). In *Knudsen*, a witness called by the Commonwealth as part of its case in chief, testified that he did not know whether the accused had cocked the hammer of the gun before confronting the victim whereas this same witness had unequivocally stated prior to trial that the accused did cock the gun. As in this appeal, the trial

court granted the Commonwealth's plea of surprise and the ruling was assigned as error.

"The courts of this Commonwealth have been liberal in allowing a party to cross-examine his own witness when it is believed that the interest of truth and justice so require. [Citations omitted] In all the cited cases, however, the witness sought to be cross-examined had made statements at trial which were directly contradictory to statements the witness had made earlier, and the in-court testimony, if believed, was such as to aid the opposing party.

"On the other hand, our courts have been loath to allow cross-examination for purposes of impeachment by use of prior statements when a witness states that he does not know or that he cannot remember. This is so for the reason that an in-court declaration does not harm the calling party nor aid the opposing party. [Citations omitted]. Hence, when a witness claims he does not know or cannot remember, the prior statements should not be introduced because of the danger that the prior statements will be considered as substantive evidence by the jury." 443 Pa. at 414-15, 278 A. 2d at 882-83.

As in *Knudsen*, we believe the court below erred but that appellant was not prejudiced, "since the witness continued to adhere to [her] trial statements that [she] was unsure whether appellant [was present]."

Appellant's second contention is closely related to the first: the trial judge should have given cautionary instructions concerning the plea of surprise as well as the use of this pretrial statement. However, other than a general objection to the charge, cautionary instructions were not requested. Accordingly, there is no error. *See, Com. v. Knudsen*, 443 Pa. at 415 n.*, 278 A. 2d at 883 n.*.

Appellant next argues that the court below erred in refusing to remove a juror for bias. Assuming this juror was biased, appellant was not harmed since this juror was seated as an alternate and subsequently excused after the charge of the court below.

While appellant does not contend that certain photographs and clothing should have been excluded as gruesome, *e.g., Com. v. Wilson,* 431 Pa. 21, 244 A. 2d 734 (1968), *cert. denied,* 393 U.S. 1102 (1969), he does argue that the trial judge committed fundamental error by failing to instruct the jury as to why these items were admitted. However, the record clearly reveals the following discussion by the trial judge in his charge: "Members of the jury, allow me to comment at this time that these photographs are not before you for the purpose of inflaming your mind or your passions, but rather to enable you to see the nature and the gravity and the extent of the assault that was committed upon this victim, and you should consider them for the purpose and that purpose alone." We find no error in this respect.

During the course of the trial, two of appellant's alleged accomplices testified against him without any constitutional warnings being given to them. For this reason, appellant contends that *his* constitutional rights were violated. It is axiomatic constitutional law that a witness' constitutional rights are personal and cannot be claimed by or for another, including the party by or against whom he is called to testify. *See, generally,* 98 C.J.S. *Witnesses,* §451a (1957). If each accomplice's counsel saw fit to permit such testimony, appellant cannot object.

Owing to the testimony of these alleged accomplices, the trial judge, in his charge, defined "accomplice" and cautioned the jury as to the probative use of this testimony. However, appellant argues that these individu-

als should not have been characterized as accomplices. For a variety of reasons, there is no error. First, the instruction could only harm the Commonwealth as the appellant could only benefit from cautionary instructions concerning those witnesses against him. Second, failure to give such instruction might have been reversible error. *E.g., Com. v. Sisak,* 436 Pa. 262, 259 A. 2d 428 (1969). Third, a specific objection to this portion of the charge was not voiced.

Appellant next contends that the Commonwealth's comments during summation which disparaged appellant's alibi witnesses deprived the appellant of due process and a fair and impartial trial. In his summation, the District Attorney stated, "[a]s a matter of fact, ladies and gentlemen, when that Bible was sitting up here, I was afraid it was going to jump up and hit all three of them, because they took an oath." Defense counsel immediately objected but later apologized for interrupting. Nonetheless, the trial judge did remind the jury that the witnesses were under oath when they testified.

In *Com. v. Gordon,* 431 Pa. 512, 521 n.5, 246 A. 2d 325 (1968), *cert. denied,* 394 U.S. 937 (1969), the prosecutor posed the rhetorical question to the jury, "[d]id you see those eyes on that killer." While we condemned the Commonwealth's conduct, we did not believe the incident warranted the grant of a new trial. Even if we were to conclude that the prosecutor's remark in the instant appeal was improper, compared to *Gordon,* any error would be harmless. We also include in this category those statements made by the District Attorney during the course of the trial concerning appellant's counsel.[1]

---

[1] At several points, the District Attorney, in varying words, stated, "[defense counsel] doesn't understand."

At the close of the Commonwealth's case, an agreement was reached, pursuant to defense counsel's request, that the names of certain individuals subpoenaed by the Commonwealth but not called as witnesses, would not be read to the jury. The "consideration" supplied by appellant for this agreement was that no reference would be made of the Commonwealth's failure to call these witnesses. Appellant eventually called one of these individuals, Mr. William Brown (the same William Brown we discussed earlier in a different connection), as an alibi witness. Despite the understanding between counsel, defense counsel, during summation, suggested the jury ask the prosecution, "Why didn't he tell you that Mr. William H. Brown had told him and the authorities that Willie Stafford was not present in the Norris Tavern on March 11, 1968." The Commonwealth interposed an objection and this inquiry was stopped; the jury was not instructed to disregard this statement. However, during its summation, the Commonwealth answered this question: "Willie Brown sat in this Court Room day after day until yesterday, when he was called by the defense, and he sat in this court room not because [defense counsel] called him here but because the Commonwealth of Pennsylvania served him with a subpoena to be here, to be here as a witness, and he was not called as a Commonwealth witness, but he was made available and required to remain here for [defense counsel's] benefit. That is the answer, ladies and gentlemen." In our view, any impropriety is attributable to both sides and we will not split hairs over which side is "more" wrong. It is our opinion that the Commonwealth's retaliatory statement was provoked and invited by defense counsel's question. On these facts, there was no error. *See, Com. v. Tauza*, 300 Pa. 375, 150 Atl. 649 (1930).

Appellant next contends that laboratory reports concerning certain items of appellant's clothing in the possession of the Commonwealth should have been furnished to him either before or during trial. In *Com. v. Wable*, 382 Pa. 80, 114 A. 2d 334 (1955), the accused petitioned the lower court during the progress of the trial in order to inspect sanity reports prepared by psychiatrists engaged by the Commonwealth. On appeal, this Court held the refusal thereof was not error for two principal reasons: (1) the Commonwealth, at that point in the trial, had not received any reports from its psychiatrists; and (2) no question of sanity was raised at the trial. A third reason was the now-questioned general rule that the accused has no right to the inspection or disclosure before trial of evidence in the Commonwealth's possession. *E.g., Com. v. Caplan*, 411 Pa. 563, 192 A. 2d 894 (1963); *Com. v. Gockley*, 411 Pa. 437, 192 A. 2d 693 (1963); *DiJoseph Petition*, 394 Pa. 19, 145 A. 2d 187 (1958).

Our existing case law is presently summarized in Pa. R. Crim. P. 310: "All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant. *No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons.* The order shall specify the time, place and manner of making discovery or inspection and may prescribe such terms and conditions as are necessary and proper. In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession

of the Commonwealth." (Emphasis added) Once again we reaffirm our past case law and rule of court as to *pretrial* discovery. However, since appellant also sought discovery of these laboratory reports *during* trial, the question becomes whether the general rule applies with equal force to discovery at trial.

Dealing with the last sentence of Rule 310, which flatly prohibits any pretrial inspection of a witness' statement in the Commonwealth's possession, we recently held in *Com. v. Kontos*, 442 Pa. 343, 276 A. 2d 830 (1971), that any such statements must be made available to the accused upon request following the Commonwealth's direct examination of that witness. In our opinion, it would be incongruous to rule that laboratory reports need not be disclosed at trial, especially since laboratory reports, unlike witnesses' statements, are subject to the "exceptional circumstances" exception. Accordingly, we hold that laboratory reports concerning tests on an accused's clothing should be made available at trial once the Commonwealth initiates a general inquiry concerning an accused's clothing.

Concluding it would be error to prohibit defense inspection of these reports at trial, we must next examine whether this error prejudiced the appellant. We think not. Appellant's clothing was not introduced; nor was there any scientific evidence, testimonial or otherwise, relating to appellant's clothing. Finally, there is no indication whatsoever in the record that the Commonwealth violated the teaching of *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing evidence favorable to appellant. Indeed, one of the laboratory technicians, not called by appellant, was among those potential witnesses, discussed earlier, that were not called by the Commonwealth but were available to appellant.

Appellant next contends that the selection of the jury violated the principles announced in *Witherspoon v. Illinois,* 391 U.S. 510 (1968). Appellant argues that two veniremen should not have been challenged or excused for cause because of their voir dire expressions of conscientious opposition to the imposition of the death penalty. Since the United States Supreme Court has ruled that the imposition of the death penalty under statutes such as the one here invoked[2] is violative of the Eighth and Fourteenth Amendments, *Furman v. Georgia,* 408 U.S. 238 (1972), we need not consider the appellant's claim of noncompliance with the *Witherspoon* standard. *Commonwealth v. Ross,* 449 Pa. 103, 296 A. 2d 629 (1972). Thus, the *Witherspoon* principles do not mandate the invalidation of appellant's conviction. *Moore v. Illinois,* 408 U.S. 786 (1972), *citing Witherspoon v. Illinois,* 391 U.S. 510 (1968) ; *Commonwealth v. Ross, supra; Commonwealth v. Bradley,* 449 Pa. 19, 295 A. 2d 842 (1972).

Appellant lastly contends that the prosecutor's remarks during his summation concerning appellant's silence at the time of arrest and until taking the stand in his defense were prejudicial error. We agree. The prosecutor in his summation said: "And then you've heard, this defendant at about 9 :10, he's arrested, 9 :00 o'clock he's arrested, brought down to the District Attorney's office, advised of his rights; where were you, what did you do, he doesn't have to say a word, nothing. He can sit there in complete silence on his constitutional rights, and that's what he does. And you've heard from his own mouth that that's what he's done, up until yesterday . . . up until yesterday. You weigh that, in your deliberations. And you heard the contents, in essence, of this statement." The appellant

---

[2] Act of June 24, 1939, P. L. 872, §701, *as amended,* 18 P.S. §4701.

testified during direct examination by defense counsel that he had remained silent at the time of his arrest. Thus, the prosecutor was not commenting on his failure to testify. Even under these circumstances we believe the prosecutor's remarks to the jury ran afoul of *Griffin v. California*, 380 U.S. 609 (1965). In *Griffin* the Supreme Court held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence [at trial] or instructions by the court that such silence is evidence of guilt." *Id.* at 615. In so holding, the Supreme Court stated: "For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' Murphy v. Waterfront Comm'n, 378 U.S. 52, 55, which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." The Fifth Amendment protects the accused's right to remain silent and it is of no moment that in the instant case the appellant remained silent at the time of his arrest. To allow comment on his silence at the time of the arrest would also make the assertion of his privilege costly. The difference between the prosecutor's comment on the accused's failure to testify in *Griffin* and the prosecutor's comment here about the accused's failure to answer questions at the time of his arrest is "infinitesimal." *Gillison v. United States,* 399 F. 2d 586, 587 (D.C. Cir. 1968). That the appellant himself brought his silence, at the time of his arrest, to the jury's attention does not justify the prosecutor's grasping the opportunity to suggest that the appellant's guilt be inferred from his silence at that time.

Judgment of sentence reversed. New trial granted.

Former Mr. Chief Justice BELL and the late Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice POMEROY concurs in the result.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result reached by the majority. However, it is my view that the disposition of this case is controlled by this Court's recent decision in *Commonwealth v. Haideman*, 449 Pa. 367, 296 A. 2d 765 (1972). Although *Haideman* and the instant case are factually distinguishable,* the evil to be protected against is the same. In both cases, the prosecution attempted to create the impermissible inference that the accused's silence at the time of arrest may be taken as an expression of guilt. *Haideman* laid to rest any suggestion that such an inference is constitutionally permissible.

Moreover, I must disagree with the majority's holding that the violation in this case of the well-established rule that a party cannot plead surprise, and then proceed to cross-examine and impeach its own witness by use of prior statements when the witness *cannot recall or remember* matters which he spoke of with certainty before trial is harmless error. Surely it can never be harmless error when, as on this record, the improperly admitted evidence substantially and significantly advances the Commonwealth's case by undermining the defense.

Appellant was charged with conspiracy and murder. The Commonwealth tried to prove, on the basis of the testimony of two alleged accomplices, that appellant and three others were drinking together at a bar, and shortly thereafter accosted and murdered the victim.

---

* Here, defendant testified, on direct examination, that he had been warned of his rights at the time of arrest, and as a result, chose to remain silent. The prosecution, in its closing argument, seized on this assertion, and attempted to create in the minds of the jurors the inference that the defendant's silence should be taken as a manifestation of guilt.

In *Haideman*, the prosecution, during its case in chief, through the testimony of the arresting officer, attempted to create the same inference.

When the bartender testified for the defense that appellant was not at the bar the night of the crime, the Commonwealth called one Betty Gary to rebut this evidence. She testified that she *could not remember* and was not sure whether appellant was present at the bar. The Commonwealth then pleaded surprise, and over objection introduced for the purposes of impeachment her prior written statements that she had seen appellant at the bar the night of the crime.

The majority, in the instant case, quoting from *Knudsen* properly notes: ". . . our courts have been loath to allow cross-examination for purposes of impeachment by use of prior statements when a witness states that he does not know or that he cannot remember. This is so for the reason that such an in-court declaration does not harm the calling party nor aid the opposing party. . . . Hence, when a witness claims he does not know or cannot remember, the prior statements should not be introduced because of the danger that the prior statements will be considered as substantive evidence by the jury." *Commonwealth v. Knudsen,* 443 Pa. 412, 414-15, 278 A. 2d 881, 883 (1971) (citations omitted) ; see *Commonwealth v. Turner,* 389 Pa. 239, 256, 133 A. 2d 187, 195 (1957).

In *Turner,* supra, a co-defendant had been the principal Commonwealth witness at Turner's prior trial but after the trial that co-defendant denied anything to do with the crime. He further denied having any knowledge of Turner's participation in the crime. In spite of this recantation, the Commonwealth called the co-defendant to testify at the trial, pleaded surprise and was permitted to introduce his prior testimony. This Court, in reversing the conviction held: "It is wholly unrealistic to pretend that the jury was capable of eradicating from their minds Lofton's former testimony except for its effect in currently impeaching him. Even

if the jurors tried ever so conscientiously to so limit the effect of the witness's prior testimony and concluded that, by reason thereof, he was not presently worthy of belief, the resultant psychological effect would be to cause the jury to deduce that what Lofton had first testified to was the truth. The harm to the defendant from the improper cross-examination is . . . manifest. . . ." *Commonwealth v. Turner,* 389 Pa. 239, 256, 133 A. 2d 187, 195 (1957).

In *Knudsen,* supra, and *Commonwealth v. Linkowski,* 363 Pa. 420, 70 A. 2d 278 (1950), this Court regarded as harmless error the admission of impeaching statements after a witness could not recall or remember matters which he spoke of with certainty before trial. Unlike the case at hand, both of those cases involved the erroneous admission of impeachment evidence which was *not* central to the determination of the key questions in dispute. In *Knudsen,* supra, the challenged impeaching statement tended to prove the premeditation requisite for murder, but the jury found the defendant guilty only of involuntary manslaughter. In *Linkowski,* admission of the impeaching statement was held to be harmless error "inasmuch as this testimony dealt only with the fight which, although important to supply motive, is not disputed, the real question being the identity of the slayer." Id. at 424, 70 A. 2d at 280.

Here, however, the Commonwealth's case depends to a large degree on proof that appellant, together with three other defendants, visited the bar shortly before the murder. The key element in appellant's defense was the bartender's testimony that appellant was not at the bar on the night of the crime. Other than appellant's two alleged accomplices, Betty Gary was the only Commonwealth witness offered to rebut the bartender's testimony. The erroneously admitted prior

statement went to the heart of one of the key questions in dispute.

Thus, by the erroneous admission of the prior statement, the jury's verdict was fully subject to the "danger that the prior statements will be considered as substantive evidence by the jury." *Commonwealth v. Knudsen*, 443 Pa. 412, 415, 278 A. 2d 881, 883 (1971). Here, as in *Turner*, ". . . the harm to the defendant from improper cross-examination is . . . manifest. . . ." *Commonwealth v. Turner*, 389 Pa. 239, 256, 133 A. 2d 187, 195 (1957).

Although the majority properly recites the controlling law as enunciated in *Turner* and *Knudsen*, supra, it applies these principles, on this record, incorrectly.