## Commonwealth v. Harter

*Frederick D. Lingle, District Attorney,* for Commonwealth.
*Peter P. Griffin, Public Defender,* for defendant.

BROWN, *P.J.,* January 17, 1980—

## FINDINGS OF FACT

Defendant has filed a motion to enjoin the district attorney from improperly interfering with the defense investigation. Specifically he is alleging that the district attorney has advised potential witnesses not to discuss the case with defense counsel or other defense representatives.

Defendant was arrested on January 11, 1980 and charged with criminal homicide, murder of the first degree, Murder of the third degree, and voluntary manslaughter. Defendant has not yet had a preliminary hearing before a district justice of the peace.

The witnesses to whom defendant claims he has been denied access include: Trooper Steven Toboz of the Pennsylvania State Police, Dr. Walter English, Roy E. Glossner, Sr., and Police Chief Gordon Mincer of Pine Creek Township. Following the taking of evidence, the court finds that these witnesses after being contacted by the defense felt compelled to call the district attorney before speaking with defendant's representatives.

Chief Mincer was initially contacted by William Ryan, a private detective engaged by the defense,

and cooperated with him. Mr. Ryan subsequently made arrangements with Chief Mincer for him to accompany Mr. Ryan to the home of the victim's family on Sunday, January 13, 1980, for the purpose of interviewing family members. However, Chief Mincer prior to this interview contacted the district attorney about his assistance in this venture. The district attorney apparently advised Chief Mincer against such assistance out of deference to the victim's family since the victim had not yet been buried. Consequently, Mr. Ryan visited the victim's famly alone and managed a short interview with her father. There is no evidence that the victim's family was instructed by the district attorney not to speak with defense representatives.

Mr. Ryan also made arrangements with Roy E. Glossner, Sr. for an interview regarding certain statements made by defendant at the time of his arrest. Mr. Glossner, a corrections officer at the Clinton County Jail, was advised by Warden Harry Eichenlaub that perhaps he should discuss the propriety of such an interview with the district attorney. Mr. Glossner then discussed the matter with the assistant district attorney who told him the investigation was not yet completed and that he did not have to discuss anything with defense representatives. The scheduled interview with Mr. Glossner consequently did not materialize. Mr. Glossner indicated at the hearing on the present motion that he was willing to discuss the matter with the defense.

The third witness, Dr. Walter English, is in the process of conducting an autopsy on the victim at the request of the county coroner. Upon being contacted by defense counsel for a meeting to discuss the autopsy, Dr. English advised counsel that he

wished to discuss the matter with the district attorney before consenting to such a meeting. Upon doing this, Dr. English was advised by the district attorney that he did not have to talk to defense counsel. Dr. English also indicated that he was reluctant generally to discuss an autopsy with anyone when it is not completed. With regard to the present autopsy, he indicated that the microscopic sections were not completed, and it would be premature to formulate conclusions about the autopsy at this time. Consequently, defense counsel had not met with Dr. English.

The final witness in question is Trooper Steven Toboz of the Pennsylvania State Police. Trooper Toboz is one of the investigating officers in the case. At defendant's preliminary arraignment on January 11, defense counsel discussed the case with Trooper Toboz and was able to get certain basic information from him about the charges. Since that time defense counsel has twice tried to discuss the case with Trooper Toboz. These latter two efforts have not been successful as the trooper indicated that he would first have to clear such an interview with the district attorney. At the hearing Trooper Toboz also indicated that he felt that all information on the case should be released through the district attorney. No specific evidence was presented with regard to whether Trooper Toboz was directly advised by the district attorney's office not to talk to defense counsel.

## DISCUSSION AND CONCLUSIONS OF LAW

The issue presently before the court is a very narrow one, which relates to a defendant's right of access to potential witnesses. The law on this sub-

ject is very clear as illustrated by the following excerpts from Lewis v. Lebanon Court of Common Pleas, 436 Pa. 296, 260 A. 2d 184 (1969):

"We are aware of no authority in the law which gives the district attorney the right, *in general,* to deny defense counsel access to the Commonwealth's witnesses. Under the ethical standards of our profession, in the absence of special circumstances to which we hereinafter allude, the consent of the district attorney should not be necessary to insure defense counsel's right to interview a witness prior to the trial." p. 301. (Emphasis in original.)

"We are not hereby saying that witnesses themselves may be compelled to speak with defense counsel prior to trial. We merely intend to prevent the prosecuting attorney from interfering with this aspect of the defendant's preparation for trial." p. 304.

"Naturally, a witness may not ordinarily be compelled to submit to pretrial questioning by the defendant where the witness has independently chosen not to be so questioned. Our concern in the case at bar is that such choice should, in fact, be independently made." p. 304, fn. 5.

"We are of the view that, *in the absence of an affirmative and convincing showing of exceptional circumstances or compelling reasons,* a district attorney may not interfere with the pretrial interrogation by a defense counsel of persons who may be called as witnesses in the case. Specifically, after a witness has stated that he is willing to talk with counsel for the defendant unless the district attorney objects, the district attorney may not, as we already indicated, relate his lack of consent to the witnesses. The district attorney may not inter-

fere with or impose his preference or judgment on the defendant." p. 303.

With regard to Chief Mincer, the court finds that the district attorney has not denied counsel access to the witness. Keeping in mind that Lewis deals with defense counsel's right to interview a witness prior to trial, it seems clear that such an interview was conducted without interference by the Commonwealth. The district attorney's instructions to Chief Mincer with regard to his not accompanying Mr. Ryan to the residence of the victim's family may constitute a denial of assistance but does not constitute a denial of the right to interview. The reasons for the district attorney's instructions arising out of a concern for the feelings of the victim's family are legitimate and his judgment will not be disturbed by the court.

The problem with regard to Mr. Glossner appears to have been eliminated, since Mr. Glossner has indicated in court that he is willing to discuss the case with the defense. To the extent any instructions from the district attorney's office discouraged Mr. Glossner from talking to the defense, such instructions are disapproved by the court on the basis of the rules previously discussed.

The situation involving Dr. English would suggest that defense counsel has been somewhat premature in attempting to arrange an interview in view of the incomplete nature of the autopsy. Again, the court disapproves of any suggestion by the district attorney's office that Dr. English should not discuss the matter with defense counsel. However, Dr. English has indicated other valid reasons for not discussing the autopsy and it would appear that his decision to discuss the matter should await the completion of the autopsy and then be made

independently of any influence by the district attorney.

Preliminarily the district attorney has argued that the duties imposed upon him by Lewis are not applicable, since the defendant has not yet had a preliminary hearing and been bound over to court. No authority has been cited in support of this interpretation of Lewis. It is doubtful that a prosecutor's professional and legal responsibilities can be so limited, and the court concludes that from the moment a defendant is charged with a crime, the above quoted rules come into play.

Trooper Toboz is obviously working very closely with the district attorney's office in this investigation and understandably will share many of the sentiments of the district attorney. It is impossible as well as impractical for the court to attempt to determine what thoughts Trooper Toboz holds independent of the district attorney from those thoughts that are brought about by the influence of the district attorney. In this context, the court can merely register its disapproval of any direct instructions by the district attorney as well as any subtle innuendoes which would prevent Trooper Toboz from discussing the case with defense counsel. It is incumbent upon the district attorney to clearly instruct Trooper Toboz that the extent of his discussions with defense counsel is a matter for the Trooper's sole discretion.

A consideration of the entire record makes it clear that there has been no concerted effort by the district attorney to contact witnesses generally to advise them not to discuss the case with defense counsel. To the contrary, all of the present problems have arisen because of a desire on the part of the witnesses to contact the district attorney prior to discussing the case. The court cannot find that the

district attorney has instructed any witnesses not to talk with defense counsel. However, his advice that a witness has the right not to talk to defense counsel could well be construed as expressing the district attorney's preference that the witness not say anything. In order to eliminate any such problem, the district attorney will be required in the future, if contacted by witnesses seeking advice as to whether they should confer with defense counsel, to advise such witness that the decision is one which they must make on their own and that they should not be influenced by the district attorney in any way in making that decision.

The witnesses named in the proceedings up to this point have appeared in court, and each has been instructed by the court that whether they wish to discuss the case with defense counsel must be resolved by each of them individually, without any influence from the district attorney's office. In view of these instructions, it will not be necessary to enter an order granting defendant any relief with regard to these witnesses.

## ORDER

And now, January 17, 1980, based upon the foregoing memorandum and without finding that the district attorney has engaged in any improper conduct, but for the purpose of preventing any future problems regarding access to witnesses, it is hereby ordered

(1) That the office of the district attorney, including any employes and agents thereof, refrain from advising potential witnesses generally that they should not meet or talk with defense counsel or other duly authorized defense representatives.

(2) In the event the office of the district attorney is contacted by potential witnesses seeking advice as to whether they should discuss this case with defense representatives, the district attorney's office should advise such persons that each has the individual right to either talk or not talk to defense representatives and that such a decision must be made by the witness independent of any preference of the district attorney, and further that the district attorney's office should express no such preference to a potential witness.