434 A.2d 147

**COMMONWEALTH of Pennsylvania,**

v.

**Norman WHALEY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 30, 1981.

Filed Aug. 21, 1981.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER and JOHNSON, JJ.

CERCONE, President Judge:

Appellant, Norman Whaley, takes this appeal from his conviction in a non-jury trial on charges of rape, unlawful restraint, recklessly endangering another person, and terroristic threats. Appellant raises two arguments: (1) whether appellant was denied due process of law when the Commonwealth, in a rape prosecution, lost bedsheets, seized from appellant's residence, before the sheets could be submitted to scientific analysis, and, (2) whether the court erred in denying appellant's pre-trial motion asking that the Commonwealth be forbidden from introducing photographic and testimonial evidence regarding the lost bedsheets. We find that neither of appellant's contentions has any merit and we affirm.

These are the facts of the instant case. According to the testimony of the victim, Vanessa Moore, on April 27, 1979, in the early morning hours she was approached by appellant at the corner of 52nd and Market Streets in Philadelphia. Appellant wanted Miss Moore to accompany him and when she refused appellant grabbed Miss Moore's umbrella and hit her with it, knocking her out. When Miss Moore came to, she and appellant were in an auto on Saint Bernard Street. Appellant paid the driver of the car $2.00 and appellant and Miss Moore, who was still dazed, went into the house. Once inside, appellant told Miss Moore that she "wasn't going anywhere." Miss Moore then picked up a lamp and attempted to escape by throwing it through a window, however the screen on the window stopped the lamp and the window only cracked. Appellant and Miss Moore struggled and appellant punched Miss Moore and forced her upstairs. Appellant ordered Miss Moore to undress and to lie on his bed, where appellant attempted to have sexual intercourse with her.

Miss Moore continued to resist and appellant ejaculated onto the sheets.

Miss Moore was then permitted to dress and go downstairs with appellant to get something to eat. There, in a strange turn of events, Miss Moore saw a woman, a Mary Walker, who worked with Miss Moore. With Miss Walker was appellant's brother, Camuel Whaley. Though Miss Moore was crying and told Mary Walker that appellant had beat her, nothing was done to help Miss Moore and appellant again forced Miss Moore upstairs. A second struggle ensued during which appellant kicked Miss Moore in the leg and punched her in the nose, causing her to bleed on his bed. Miss Moore subsequently escaped and reported the attack to the police that same morning.

A few hours after the attack, several officers went to appellant's home and arrested appellant. The police took black and white pictures of appellant's bed and seized the stained sheets, the broken living room lamp and other items. Detective Ronald Oliver was responsible for removing the sheets and taking them to the crime laboratory, where they were tagged and a property receipt was issued. The next day, Detective Oliver showed the various items to the victim, Miss Moore, for identification and the detective returned the items to the locked storeroom. Later in the day, when Detective Oliver went to the storeroom to retrieve the items and take them to the Crime Laboratory he found that the bedsheets were missing. For three weeks, the detective searched for the sheets and inquired of all personnel and of each of the fourteen detectives in his unit if any of them had inadvertently picked up the sheets. A memo was placed in the mail box of every detective each day as a reminder that he should be on the look-out for the missing items. The search was fruitless. The remaining evidence concerning the sheets was the photograph with notations made by the police, the property receipt and the testimony of three policemen who saw the sheet with the red stains on it, all of which were introduced at trial. No chemical or scientific analysis was ever made.

In his first argument, appellant contends that he was denied due process of law when the Commonwealth lost the bedsheets. Appellant denied that he raped Miss Moore and says that she consented to sexual intercourse. Appellant claims he ejaculated in Miss Moore's vagina and that he never punched Miss Moore; therefore, appellant asserts that the loss of the sheets deprived appellant of potentially exculpatory evidence, and he cites *Commonwealth v. Chapman*, 255 Pa.Super. 265, 386 A.2d 994 (1978).

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court wrote:

> [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

It has been held that this rule applies equally to a case involving destruction of evidence if the evidence is material [1] to guilt and would have been favorable to the accused. *Commonwealth v. Chapman, supra.*

In *Commonwealth v. Mace*, 234 Pa.Super. 463, 341 A.2d 505 (1975), a case where a woman died following a bungled abortion, this Court was faced with a situation where certain autopsy specimens were destroyed by the laboratory where they had been analyzed. Preserved, however, were slides for microscopic study made from some of the body tissue plus remains of other body tissues. Additionally, hospital records were available as were the doctors who analyzed the tissue. The appellant in *Mace* argued that he was entitled to an independent medical expert's evaluation of the autopsy specimens to determine the cause of death, and he contended that the destruction of the physical evidence made discovery under the rules of court impossible and denied him his constitutional right of due process. Relying on the United States Supreme Court decisions in *Brady v. Maryland, supra*

---

1. In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) the Supreme Court set forth the proper standard of materiality under *Brady*. This standard is detailed at 150, infra.

and *United States v. Augenblick*,[2] 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), the *Mace* court ruled that there was no denial of due process. The *Mace* court took note of the evidence which remained and said:

> When all these factors are taken into consideration, it is apparent that the Commonwealth has not overborne the defendant by secretly amassing evidence or designing a case unfairly weighted against him. The good faith of the Commonwealth is attested to by the willingness with which it agreed at the hearing to make available its evidence and witnesses relevant to the cause of death. The validity of the findings can be tested by the defense by examination of the slides, remaining imbedded tissues, and hospital records as well as by cross-examination at trial of the prosecution's six expert witnesses.

Id., 234 Pa.Super. at 472, 341 A.2d at 510.

Our decision in *Mace* relied on the rationale in *Brady*, wherein the Court wrote:

> Society wins not only when the guilty are convicted but when criminal trials are fair.... A prosecution that withholds evidence on demand of an accused ... helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not "the result of a guile"....

*Brady v. Maryland, supra*, 373 U.S. at 87–88, 83 S.Ct. at 1197.[3]

**2.** In *United States v. Augenblick, supra*, the tape of the interrogation of a witness was lost prior to the request for discovery. The Supreme Court ruled that procedural due process was not denied the accused despite this loss. The Court held that this issue involved a federal rule of evidence under the Jencks Act, 18 U.S.C. § 3500 (1969), which did not have constitutional significance. (The Jencks Act provides for the discovery of statements made by witnesses testifying against the defendant). The Court found that the Government carried its burden of explaining why it could not produce the tape.

**3.** In this vein, our Supreme Court has written: "The interests of the Commonwealth do not require that a district attorney should win

In the subsequent case of *Commonwealth v. Chapman, supra,* this Court was again asked to decide whether the destruction of certain items of evidence denied the accused, who was charged with rape, a fair trial. Of the numerous items mentioned by the accused in his brief, we found that the destruction of only one item—a pair of men's undershorts found at the scene—arguably could have prejudiced the accused. We noted that the defendant in *Chapman* said that he wished to show the undershorts to the jury and to perhaps argue, based on physical appearance, that the shorts did not fit the defendant. We therefore remanded for a hearing to determine if such an argument was feasible and to determine if the undershorts would have been "evidence favorable to [the] accused." *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. 1194. The difference between *Chapman* and *Mace* is that in *Mace,* although the specific items of evidence required by the defendant were not available, there was other evidence available by which the defendant could pursue his objective. The defendant in *Chapman,* however, asserted that he intended to use the missing item as demonstrative evidence before the jury. We found this evidence "material" within the meaning of *Brady* and we remanded in *Chapman* and directed that if, as the accused asserted, the court found that the shorts did not appear to be the accused's, then the defendant should be granted a new trial. If a new trial was ordered, we suggested that the court either exclude all mention of the shorts or give a missing-evidence instruction.

In the instant case, appellant contends that tests on the sheets "may" have shown that there was no seminal fluid on it and "may" have shown that the red stains were not blood, or at least were not the victim's blood. Appellant take the position that a presumption should be made in appellant's favor that tests on the sheet would support appellant's version of the story. Appellant's position is not in line with

every case, but rather that justice should be done. The state has an interest in seeing that the innocent not be wrongfully punished, as well as in convicting the guilty." *Lewis v. Lebanon Court of Common Pleas,* 436 Pa. 296, 300–301, 260 A.2d 184, 187 (1969).

*Brady* and the cases based thereon. In *United States v. Agurs*, 427 U.S. 97, 112–113, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342, 354–355 (1979), regarding the materiality test of *Brady*, the Court said:

The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. *It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated on the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.* On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. (emphasis added)

At appellant's trial, there was ample evidence introduced to support the guilty verdict. Besides the testimony of the victim, Miss Moore, the trial judge also heard the testimony of Mary Walker, who corroborated portions of Miss Moore's testimony. Color photographs of Miss Moore's bruises were introduced, as were black and white photographs of a coffee table, said to be broken in the scuffle, and black and white photographs of appellant's bed with the stained sheets. Additionally, there was testimony from the arresting officer which indicated that the stains on the bed were a deep-reddish color, which would be consistent with Miss Moore's statement that her nose bled on the bed after appellant punched her. Therefore, unlike *Chapman*, we do not find the sheets to be "material" within the meaning of *Brady* we do not find any denial of due process.

In a related argument, appellant asserts that the court erred in denying appellant's pretrial motion to suppress all photographic and testimonial evidence regarding the sheets. Appellant cites *Commonwealth v. Chapman, supra*, as support for his position. Appellant misreads *Chapman*. In

*Chapman,* we suggested that where an accused had been denied due process under the *Brady* rule and is granted a new trial, one possible remedy is to exclude all reference to the destroyed evidence. A second suggested remedy was to give a missing-evidence instruction. This aspect of *Chapman* has no bearing on the instant case since we have already determined that appellant has not been denied due process; therefore, a remand is not necessary.

Accordingly, for the foregoing reasons, we affirm.