419 A.2d 502

**COMMONWEALTH of Pennsylvania**

v.

**Robert KJERSGAARD, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed March 14, 1980.

Nino V. Tinari, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before PRICE, GATES * and DOWLING,* JJ.

DOWLING, Judge:

Defendant's principle exception to the judgment of sentence imposed following his conviction of rape[1] and corruption of minors[2] is the propriety of admitting evidence of a prior offense.

"It is black letter law that evidence of one crime is inadmissible against a defendant being tried for another crime because the fact of the commission of one offense is not proof of the commission of another. See, *Commonwealth v. Foose*, 441 Pa. 173, 272 A.2d 452 (1971). However, there sometimes exist special circumstances which operate as exceptions to the general rule and bring the case within the equally well established principle the evidence of other crimes is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a

---

* President Judge G. THOMAS GATES, of the Court of Common Pleas of Lebanon County, Pennsylvania and Judge JOHN C. DOWLING, of the Court of Common Pleas of Dauphin County, Pennsylvania, are sitting by designation.

1. Act of Dec. 6, 1972, P.L. 1482, No. 334 § 1, 18 Pa.C.S. § 3121.

2. Act of Dec. 6, 1972, P.L. 1482, No. 334 § 1, 18 Pa.C.S. § 3125.

logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. See, *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value. *Commonwealth v. Peterson*, 453 Pa. 187, 197, 198, 307 A.2d 264, 269 (1973).

While this may be Hornbook law and is easily formulated, its application has plagued the courts. The decisions are rather numerous, the reasoning usually articulate, but the conclusions frequently divided. The problem would appear to be that the so-called special circumstances are of an unusually subjective nature and invite more than normally one's own philosophical approach to criminal justice. A resolvement of whether in a particular case the exceptions or the general rule should prevail intrudes upon such basic concepts as the nature of a trial: whether it is really a search for truth and whether substantial justice should prevail over a perfect trial.

The facts established through the jury's imprimatur of guilty are these: the victim, a 16 year old girl, newly arrived in Philadelphia needing directions approached appellant on a Center City sidewalk. He inquired if she was looking for employment and learning that she was, offered to introduce her to an elderly neighbor in need of someone to care for her. The young girl agreed to accompany the 35 year old defendant to the lady's home, but when they arrived at where he stated that she lived, he said that he would first have to visit his own apartment across the street to pick up something and telephone the prospective employer. Having lured the girl into his apartment, the defendant began a discussion of sexual activities of girls in the neighborhood. He said that fifteen other young women had been murdered because they had refused his orders to undress. Growing apprehensive she attempted to leave, but the defendant blocked the path to the door, removed a pair of scissors from his pocket and threatened to kill her if she didn't undress.

When she refused, he pressed the blade to her throat, forced her to remove her clothing and thereafter committed several acts of rape. He advised her that he would kill her if she screamed and if she did so, a number of other men would come who would also rape her. He finally allowed her to dress and leave in a cab whereupon she drove to the police station and immediately reported the rape. The officers, based on her description, were able to locate the defendant's apartment where they seized a pair of scissors and arranged for a stakeout. Three days later the defendant was arrested upon his return to the apartment from New York where he fled following the crime. Shortly after his arrest, the defendant made a full confession corroborating the victim's account in all material respects. He also identified the pair of scissors taken by the police from his apartment as those used to threaten the girl.

To rebut the defendant's contention that the girl had consented to intercourse after voluntarily accompanying the defendant to his apartment, the Commonwealth produced evidence that less than two (2) months before his arrest, the defendant had raped a 14 year old girl in St. Petersburg, Florida. There were many similarities in the two crimes. The defendant told this victim that a neighbor was interested in purchasing a bicycle that she wished to sell and lured her to his apartment ostensibly to visit the neighbor. He bolted the door, drew a switchblade knife, pressed it to her throat and demanded that she undress. He then raped her repeatedly during the course of the afternoon and evening threatening to kill her if she screamed. He allowed her to leave the next morning whereupon she immediately notified the police and directed them to the defendant's apartment which was unoccupied by the time that they arrived. At the trial, the girl identified the defendant as her assailant. She had also given the police a detailed physical description of him at the time of the rapes including numerous distinctive tattoos on his arms.

The Commonwealth contended and the trial court agreed that evidence of this prior offense was admissible to show a

common scheme, plan or design and to negate the defense of consent. There are significant similarities between the two offenses. They both followed a chance meeting in a public place with young girls who responded to an offer of assistance and were lured to an apartment where they were prevented from leaving. In each case he pressed a sharp blade to their throat, ordered them to disrobe, threatening that if they screamed, he would kill them. In contrast to the viciousness of the assaults, he eventually allowed them to leave and immediately upon their departure, fled the scene.

■ Defense argues that the distance between the two crimes and the interval of time prohibited the admissibility of the prior incident. In *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977), Justice Roberts, quoting Professor Wigmore, stated that the length of time must depend largely on the circumstances of each case and always to be left to the discretion of the trial court. The fact that the other crime occurred in a jurisdiction other than that where the instant offense occurred, does not render evidence of such other crime inadmissible. Wharton's Criminal Evidence § 250, p. 573. Defendant's reliance upon *Commonwealth v. Boulden*, 179 Pa.Super. 328, 116 A.2d 867 (1955), and *Commonwealth v. Bradley*, 243 Pa.Super. 208, 364 A.2d 944 (1976) is misplaced. In those cases, evidence of other crimes (preceding the charged offense by one and six years, respectively) was admitted not to show the similarity of the appellants' modus operandi, but rather to suggest that the appellants engaged in single schemes of which the individual crimes revealed their aberrational mental and moral nature. Because in each case the prior acts were too remote in time to support the inference that they were part of a unified sequence of acts leading to the offense at bar, their admission invited conviction by the jury on the grounds that the appellant was of unsavory character and inclined to commit sexual crimes.

By contrast, in the instant case, evidence that less than two months earlier Kjersgaard had raped another young girl

under similar circumstances was presented for the purpose of rebutting defense arguments that the victim's voluntary entry into defendant's apartment indicated that she also consented to participate in sexual intercourse with him.

■ The trial court's repeated and extensive limiting instructions to the jury, both before the victim's testimony and prior to deliberations, negated any danger that the jury would convict only because Kjersgaard was a "bad" man who had raped some other girl in the past, irrespective of whether he committed the charged crime.

Some decisions in an attempt to further erode the exceptions call for a balancing test utilizing evidence of prior crimes that may be relevant. One of its more recent enunciations is found in *Commonwealth v. Bond*, 261 Pa.Super. 311, 320, 396 A.2d 414, 419 (1978):

"In *Commonwealth v. Hude*, 256 Pa.Super. 439, 390 A.2d 183 (1978) we held that even though evidence of prior crimes might be relevant, its admission must be based on a balancing of several considerations: on the one hand, the actual need for the evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that other crimes were committed and that the accused was the actor, and the strength or weakness of the other crimes evidence in supporting the issue, and on the other hand, the degree to which the jury would probably be roused by the evidence to overmastering hostility. Accord, *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977); *Commonwealth v. Wright*, 259 Pa.Super. 293, 393 A.2d 833 (1978).

This is a verbatim quote from McCormick, et al. on Evidence 2d Ed. p. 453 which quotation in McCormick is immediately followed by the observation that "such a balancing calls for a large measure of individual judgment about the relative gravity of inponderables. Accordingly, some opinions stress the element of discretion."

■ In setting the scales for balance, they should first be adjusted to the degree of relevancy, i. e. how strong are the

special circumstances. Here the degree of similarity is such that the evidence of the other crime was clearly relevant to show a common scheme or plan. Thus, weighed and showing no "affectional preference" for the convicted, we find that the balance favors the admissibility of the prior offense.

The principle consideration should be the degree to which the jury would be affected by the proffered evidence. We feel that the nature of the Commonwealth's case was such that this testimony was not decisive. Furthermore, unlike many of the other decisions, the evidence of the prior offense was quite strong. It was also particularly supportive on the issue of consent.

■ The remaining contentions are more easily disposed of. The argument that the District Attorney in his closing argument to the jury made a reference to the defendant's failure to take the witness stand is both specious and misleading. Defense counsel in his brief takes one sentence entirely out of context "what position does he take as a matter of defense?" The full statement is as follows:

> Ladies and gentlemen, during this brief recess that we just had I had the time to think about [defense counsel's] summation. What position does he take as a matter of defense?
>
> [objection overruled]
>
> He argues to you that Theresa Pettit, a 14 year old girl, from Florida, is a liar. He argues to you that Janine Colonna is a liar. . . .

Returned to its proper context, the objected to statement is revealed to be an entirely permissible response to defense counsel's summation. See, *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974).

Objections were also made to the District Attorney cross examining a Florida detective who had been in charge of the investigation in that state and who, on direct examination, had said that the victim had not mentioned the defendant's numerous distinctive tattoos in her first two statements given to the police. On cross–examination the detective

read those statements and further testified that the girl had told the police of the tattoos soon after the rape.

■ Introduction of these statements, consistent with the victim's trial testimony, was proper rehabilitation of the witness' credibility. Rebutting defense counsel's contention that her description of the rape and identification of the assailant was a recent fabrication. See, *Commonwealth v. Gore*, 262 Pa.Super. 540, 396 A.2d 1302 (1978).

■ In a related argument, the defendant contends that both victims' testimony regarding his statement that he had murdered numerous people, constituted improper reference to unrelated crimes. This argument is the merest flummery. Kjersgaard's "admissions" were cogent evidence that his victims submitted only upon the threat of injury or death. *Commonwealth v. Seigrist*, 253 Pa.Super. 411, 420, 385 A.2d 405, 410 (1978).

■ In conclusion, the defendant does not, of course, omit to throw in the universal complaint that the evidence was insufficient to prove the defendant's guilt beyond a reasonable doubt. The testimony was been reviewed above and overwhelmingly demonstrated the correctness of the jury's finding.

Judgment of sentence affirmed.

GATES, J., files a dissenting opinion.

GATES, Judge, dissenting:

The majority upholds the lower court's admission of evidence of an alleged prior rape[1] on the basis that a nearly identical method or a common scheme, plan, or design was established. It relies on the following similarities to determine the logical connection between the crimes is present:

". . . They both followed a chance meeting in a public place with young girls who responded to an offer of assistance and were lured to an apartment where they

1. Appellant was not tried or convicted for this rape in the state of Florida where it was supposed to have occurred.

were prevented from leaving. In each case he pressed a sharp blade to their throat, ordered them to disrobe, threatening that if they screamed, he would kill them. In contrast to the viciousness of the assaults, he eventually allowed them to leave and immediately upon their departure, fled the scene."

The majority further supports its conclusion on the grounds that (1) the evidence of the prior incident was introduced to rebut the defense of consent; and (2) the jury would not be greatly prejudiced against the defendant because the proffered evidence was not decisive in light of the Commonwealth's case.

While recognizing that, in some respects, the two rapes were similar, they cannot be said to represent such "a concurrence of unusual and distinctive facts," *Commonwealth v. Peterson*, 453 Pa. 187, 307 A.2d 264 (1973), "as to be like a signature," McCormick on Evidence § 190 (2d Ed. 1972).

Numerous dissimilarities existed here including: (1) the rape charge occurred in Pennsylvania while the other occurred in Florida; (2) the events were two months apart; (3) initial contact with the one assailant occurred in center city Philadelphia while the other meeting occurred on a beach; (4) different ruses were used to lure the victims to an apartment in one case and to a house in the other; (5) the weapons used were not identical; (6) in the Florida rape, the assailant spoke about an Alan Leonard from Alabama, who was "out to get" the victim or her family, no similar story was told in the other; (7) the Florida rape involved shaving the victim's pubic hair and sodomy, but there were no such incidents in the Pennsylvania rape; (8) one victim was detained for twenty hours, the other for only three hours; (9) the Florida incident involved ten or more acts of sexual intercourse, but only three acts in this case; and (10) the assailant in Pennsylvania called a cab and gave the prosecutrix fare to return home, the other did not.

Because of the significant dissimilarities, no logical nexus exists here, and thus, evidence of the prior rape is inadmissi-

ble.  The perversity of allowing evidence of a crime other than the one being heard is not only the want of probative connection between the two crimes, but the obvious prejudicial effect such testimony has upon a jury.  It is bound to sway a jury to believe that the accused is a criminal and, therefore, most likely committed the crime for which he is being tried.  Evidence of this kind raises collateral issues and diverts the attention of the jury from the crime being charged.  Moreover, we allow that proof of another offense will more often than not be taken by the jury as justifying a condemnation of the defendant irrespective of his guilt of the offense charged.  See *Commonwealth v. Boulden*, 179 Pa.Super. 328, 116 A.2d 867 (1955).  In sex cases courts have been more liberal in the admission of evidence of other crimes.  This fallacious reasoning prevails despite the statistics that sex offenders, as compared with other types of criminals on parole, are by far the least likely to be returned to prison for repetition of the same kind of crime.  179 Pa.Super. at 342, n.2, 116 A.2d 867, 873.

Nor are we impressed with the Commonwealth's argument that proof of the commission of the crime of rape in Florida two months earlier is evidence of the "state of mind" of the appellant at the time of the incident in Philadelphia.  "The state of mind that will permit the admission of an unrelated crime is the state of mind at the time of the commission of the offense as shown by the acts or words of the defendant so close in time to the alleged offense as to have bearing upon his state of mind at that time.  Defendant's conduct over the years cannot be shown to prove he has a depraved or wicked state of mind generally."  *Commonwealth v. Boulden*, 179 Pa.Super. 328, 341, 116 A.2d 867, 873 (1955).

I feel comfortable in my conclusion that it was error to allow the jury to hear about this alleged Florida episode when we consider the rules relating to the joinder and severance of the same or similar offenses for trial.

The American Bar Association project on minimum standards for criminal justice relating to joinder and severance

§ 2.2 would give a defendant the absolute right of severance. The standards provide: "Whenever two or more offenses have been joined for trial solely on the ground that they are the same or similar character, the defendant shall have a right to a severance of the offenses." The enactment of such a rule would obviate many of the present difficulties encountered, not only in joinder and severance cases, but in cases involving evidence of prior criminal conduct on the part of the accused, especially where, as here, the prior criminal conduct has not been adjudicated.

In Pennsylvania it is well–settled that the trial judge has discretion to grant or refuse severance upon timely motion by a defendant charged in the same information (or separate informations consolidated for trial). However, the guidelines for the exercise of this discretion are not clear except in those cases where such offenses arose out of the same transaction, occurrence, or episode. See *Commonwealth v. Campana*, 452 Pa. 233, 304 A.2d 432, *vacated* and *remanded*, 414 U.S. 808, 94 S.Ct. 73, 38 L.Ed.2d 44 (1973), *on remand*, 455 Pa. 622, 314 A.2d 854 (1974).

I am of the opinion that if both of these alleged rapes occurred in the City of Philadelphia but separated both as to place and substantial time, such as in this case, it would have been an abuse of discretion not to grant a defendant's motion to sever the cases for trial. The offenses here did not evidence a common scheme, plan or design sufficient to meet the "other crimes" test nor did they arise out of the same criminal transaction, occurrence or episode. I am of the opinion that these crimes are separate and distinct and that proof of one has no probative value in the trial of another. Consequently, it would have been prejudicial error to join them for trial.

The potential prejudice to appellant is obvious. The cross–examination of the prosecutrix suggests the defense of consent. He may well have wished to testify with respect to these charges. However, his right to testify may well be chilled by the facts and circumstances surrounding the Florida incident. Cf. *Commonwealth v. Bighum*, 452 Pa. 554, 307

A.2d 255 (1973). Of course the contrary may be true as well. In either event, he did not testify and the record does not disclose his reasons, apart from his constitutional right not to do so. Nonetheless, the injection of the Florida incident in this case created a trial within a trial requiring the appellant to meet a charge of which he had no notice and perhaps made it impossible to refute. Additionally, it raised collateral issues that had the tendency to divert the attention of the jury from the crime being charged. Thus I conclude that the introduction of the alleged prior offense had the potential effect upon the jury of justifying a condemnation of the appellant, irrespective of his guilt of the offense charged.

The majority is probably correct that this evidence is not decisive in light of the victim's testimony and the appellant's inculpatory statement. The case was simply overtried by the Commonwealth. But hard cases make bad law. The majority is setting precedent for subsequent cases which will not be so hard. I sense, and would like to join, the majority in deciding this case. But that is not the role of an appellate court. We should deal with principles of law, apply precedent where it exists and setting it where it does not. For these reasons I dissent and would order a new trial.