444 A.2d 670

**COMMONWEALTH of Pennsylvania**

v.

**Frederick Weiler BLADY, a/k/a Frederick Weiler Brady, a/k/a Frederick William Brady, Appellant.**

Superior Court of Pennsylvania.

Argued June 9, 1980.

Filed Feb. 5, 1982.

Robert N. Bryan, Honesdale, for appellant.

Stephen G. Bresset, Assistant District Attorney, Honesdale, for Commonwealth, appellee.

Before PRICE, WICKERSHAM and LIPEZ, JJ.

LIPEZ, Judge:

In a jury trial, defendant was convicted of arson-endangering property, 18 Pa.C.S. § 3301(b)(1), risking catastrophe, 18 Pa.C.S. § 3302(b), and criminal mischief, 18 Pa.C.S. § 3304(a)(1). Post-verdict motions were filed and denied, and judgment of sentence entered. In this appeal from that

judgment of sentence,[1] we reverse and grant a new trial, because we agree with defendant's contention that the court below erred in admitting testimony concerning an arson defendant committed in New Jersey in 1965 as substantive proof of the crimes charged in this trial.[2]

The charges in this trial arose out of a fire on October 5, 1978 at the Petto Allen Inn in Honesdale, Pennsylvania. A detective from the Morristown, New Jersey police department testified that on December 21, 1978 defendant confessed to setting this fire. The Commonwealth then attempted to elicit from the detective testimony concerning defendant's arson conviction in New Jersey for a fire he confessed to setting at the Hotel Revere in Morristown on May 22, 1965. Over defense objection, the court below admitted this testimony.

The general rules applicable to testimony of this type have been stated by our Supreme Court:

> It is a principle of long standing in this Commonwealth that evidence of a distinct crime, except under special circumstances, is inadmissible against a defendant who is being tried for another crime because the commission of one crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind. *Commonwealth v. Fortune*, 464 Pa. 367, 373, 346 A.2d 783, 786 (1971) [sic]; *Commonwealth v. Wable*, 382 Pa. 80, 84, 114 A.2d 334, 336

---

**1.** While the appeal is properly before us because judgment of sentence was entered, the trial judge did not file an opinion in accordance with Pennsylvania Rule of Appellate Procedure 1925(a). There is no point in remanding for an opinion, however, since the trial judge had left the bench by the time this appeal was heard. *Cf. Nigrelli v. Cody*, 281 Pa.Super.Ct. 156, 161, n.2, 421 A.2d 1195, 1198, n.2 (1980), *rearg. den'd.*

**2.** Because of our disposition, we need not consider defendant's other claims for a new trial: (1) that his confession should have been suppressed as a product of coercion; and (2) that his confession should have been suppressed because of violation of the "six-hour rule" of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). *Cf. Commonwealth v. Blady*, 492 Pa. 285, 424 A.2d 864 (1980), *rearg. den'd* (1981) (involving same defendant, but different fire).

(1955). The general rule, however, allows evidence of other crimes to be introduced to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. *Commonwealth v. Fortune, supra; Commonwealth v. Wable, supra.* Thus, although the law does not allow use of evidence which tends solely to prove that the accused has a "criminal disposition," evidence of other crimes is admissible for certain purposes if the probative worth of this evidence outweighs the tendency to prejudice the jury.

*Commonwealth v. Morris,* 493 Pa. 164, 175, 425 A.2d 715, 720 (1981).

The Commonwealth argues that the similarities between the 1965 New Jersey fire and the 1978 Pennsylvania fire were so great as to show a distinctive modus operandi.[3]

**3.** The Commonwealth's brief also makes frequent mention of the "common scheme" exception, which is easily confused with the "modus operandi" exception, courts and litigants frequently using one phrase when they mean another. *See, e.g., Commonwealth v. Kjersgaard,* 276 Pa.Super.Ct. 368, 372–75, 419 A.2d 502, 504–05 (1980). Some factual situations do implicate both, but the two exceptions are quite distinct. The distinction can be easily illustrated. This case, for example, could involve the common scheme exception if there were evidence that both hotels were owned by the same person, and that defendant held a long-standing grudge against that person. There is no such evidence here, however, or any other evidence of a common scheme, and therefore we shall not discuss this exception in the text, despite the numerous references to it in the Commonwealth's brief.

At one point in the court below, the prosecution also made mention of the so-called "identity" exception, but as McCormick has observed, "[A] need for proving identity is not ordinarily of itself a ticket of admission, but that the evidence will usually follow, as an intermediate channel, some one or more of the other theories here listed. Probably the second (larger plan), the third (distinctive device) and the sixth (motive) are most often resorted to for this

*Commonwealth v. Morris, supra,* specifically formulated the requirements for admissibility of such evidence [4] as follows:

> As Professor McCormick explains, a distinctive and unusual "modus operandi" appears where "crimes of the accused [are] so nearly identical in method as to earmark them as the handiwork of the accused." He adds a further clarification:
>
>> Here much more is demanded then [sic] the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual or distinctive as to be like a signature.
>>
>> McCormick on Evidence, § 190 at 449 (2d Ed. 1972).
>
> The Commonwealth must show more than the other crimes are of the same class as the one for which the defendant is being tried. Rather, there must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others. *See, Commonwealth v. Fortune, supra.*

*Id.,* 493 Pa. at 176, 425 A.2d at 720–21. *Cf. Commonwealth v. Rini,* 285 Pa.Super.Ct. 475, 480, 427 A.2d 1385, 1388 (1981).

The Commonwealth relies on the following similarities in the evidence concerning the 1965 and 1978 fires: (1) the defendant was angry before the fires were started; (2) defendant was a resident at each hotel at the time it had the fire; (3) both hotels were old and had wooden floors, on which the fires were started in a pile of papers; (4) defendant returned to his room after each fire; (5) after returning to his room, defendant attempted to help others get out of the hotel; and (6) after both fires, defendant re-entered the hotel after initially leaving. Defendant responds by point-

purpose." McCormick on Evidence (2d ed. 1972) § 190, p. 451 (footnote omitted). *See also United States v. Woods,* 484 F.2d 127, 134 (4th Cir. 1973).

**4.** Although *Morris* involved joinder of charges for trial, the Court adopted the same standards as applies to admissibility of prior criminal acts under the "modus operandi" exception, so the *Morris* formulation of that standard is directly applicable here.

ing out some dissimilarities,[5] but even without considering these, we do not believe the Commonwealth's six similarities are a sufficiently distinctive modus operandi to constitute defendant's "signature." Only the third even relates to the manner of commission of the crime, and lighting a pile of papers on a wooden floor is hardly a distinctive method of setting fire to an old building.

The fourth, fifth and sixth similarities are conduct the defendant would be equally likely to engage in, whether he had set the fires or not. The fact that the defendant was angry at the time of both fires is at least of some help to the Commonwealth's position, but in neither case was the defendant angry at anyone or anything connected with the hotel. Essentially, the Commonwealth contends that the defendant's unique "signature" consists of being a hotel resident, who is angry at something unrelated to the hotel at the time the hotel has an arson committed by very common means. This is not such a high correlation in details as to make it very unlikely that anyone other than the defendant could have committed the crime, as required by *Commonwealth v. Morris, supra.*

The connection between the fires is further weakened by the fact that they took place thirteen years apart in two different states. Of course, we agree with the Commonwealth's assertion that the length of time between incidents is merely a factor to be weighed in light of the circumstances of each case. *See Commonwealth v. Ulatoski,* 472 Pa. 53, 63, 371 A.2d 186, 191–92 (1977), *reh'g den'd.* The Commonwealth's copious brief discusses numerous cases, in some of which the prosecution was permitted to show prior criminal activity occurring even more than thirteen years before the crime for which the defendant was being tried, but all these cases involved clearly distinguishable facts.

**5.** Dissimilarities on which defendant relies are: (1) in one case, defendant was angry at a girl friend, while in the other, he was angry at the world in general; (2) one fire was started with matches, the other by throwing a cigarette; (3) one fire was set in a closet, and the other was not; (4) one fire was in the first floor lobby, the other in the basement; and (5) an alarm was pulled in one case, but not the other.

In *Commonwealth v. Patskin*, 372 Pa. 402, 413, 93 A.2d 704, 710 (1953), evidence that the defendant had beaten his wife was admissible as evidence of motive and malice against the same victim when he was accused of murdering her seventeen years later. The "modus operandi" exception was not involved. *Cf. Commonwealth v. Ulatoski, supra.* In *United States v. Woods*, 484 F.2d 127, 134 (4th Cir. 1973), evidence was admitted that six infants under the defendant's care had died of cyanosis as much as twenty-four years before the infant cyanosis murder with which she was charged, but the court specifically grounded admissibility on the great number of similar incidents involved. In *People v. Peete*, 28 Cal. 306, 169 P.2d 924 (1946), the allowance of evidence of a 1920 murder to prove the defendant committed a 1944 murder, was based not only on stronger similarities than we have between the fires in this case, but also on the fact that the defendant in *Peete* had been in prison from shortly after the 1920 murder until shortly before the 1944 murder. We shall not discuss the many other cases cited by the Commonwealth. Many involve much shorter time intervals, and all are factually distinguishable, like *Patskin, Woods* and *Peete.*

Judgment of sentence reversed, and a new trial ordered.

WICKERSHAM, J., files a dissenting opinion.

WICKERSHAM, Judge, dissenting:

I dissent because I find that the lower court properly admitted the testimony at trial concerning the arson which the defendant committed in New Jersey in 1965 as substantive proof of the crimes charged in the instant case. I agree with the Commonwealth that the similarities between the 1965 New Jersey fire and the 1978 Pennsylvania fire, as delineated on page 672 of the majority opinion, were so great as to show a distinctive modus operandi and for that reason, the New Jersey fire was admissible as evidence against the defendant.

The fire in the instant case occurred in the early morning of October 5, 1978 at Petto Allen Motor Inn in Honesdale,

Pennsylvania. At trial, Robert W. Kinsman, Chief of Honesdale Fire Department, testified that the fire in question originated in a pile of bundled newspapers in an enclosed area under the central stairwell of the hotel. N.T. at 11–13. The hotel was old, N.T. at 19, and the steps were made of a wood frame. N.T. at 12. Mr. Kinsman testified that while he was trying to control the fire, he observed the defendant coming down the central stairway alone and that the defendant told Mr. Kinsman that if he were given a mask, he would help get the people out of the hotel. N.T. at 14. Mr. Kinsman also testified that he later heard one of the residents of the hotel thanking the defendant for his assistance on the morning of the fire. N.T. at 15.

Delvina M. Smith testified that she was the defendant's girlfriend in September, 1978, N.T. at 62–63, and that during the time which they spent together, he was drinking quite a bit. N.T. at 64. She testified that in the last week of September, she attempted to break off her relations with the defendant and that on the morning of October 5, 1978, at approximately 1:30 a. m., the defendant tried unsuccessfully to reach her by telephone. N.T. at 64–65. Ms. Smith was at home at the time, but her son answered the phone and informed the defendant that she was not there. N.T. at 64–65. Ms. Smith further testified that she picked up the receiver and heard the defendant, who sounded upset, talking to her son and that after this phone call, she left the phone off the hook to avoid talking to the defendant. N.T. at 65.

Charles F. Johnson, an arson and fire investigator with the Morristown Police Department in New Jersey, interviewed the defendant on December 21, 1978, concerning the fire in Honesdale, and he testified at trial as follows:

Q What, if anything, did the Defendant say concerning his involvement with the fire at the Petto's [sic] Allen Inn on October 5, 1978?

A He admitted to me that he set the fire.

Q Did he give you any reason as to why he lit the fire?

A   Yes, sir, he was mad and he had been drinking.   He was mad at a young lady that he couldn't reach on a phone.

Q   Did he say how the fire started?

A   Yes, sir, he threw a cigarette into some paper that was in a little closet under a stairwell of the main stairway going up to the Hotel.

N.T. at 75.

Police Officer Johnson, who had investigated the New Jersey fire in 1965 to which Defendant Blady had pled guilty, gave the following testimony as to the circumstances of the New Jersey fire:

Q   [D]id you handle an arson investigation in the State of New Jersey at that time?

A   Yes, sir, I did.

Q   Where was this?

A   Hotel Revere.

Q   Where is that located?

A   Morristown, New Jersey.

Q   What type of a building is it?

A   It is a hotel.

. . . .

Q   What type of structure?

A   It is a wooden structure;  it is a wooden type structure, three stories.

Q   Can you give us an indication of the age of this structure?

A   The building was over a hundred years old at that time.

. . . .

Q   During the investigation of that fire did you have an occasion to interview the Defendant?

A   Yes, sir, I did.

Q   Did he admit to you whether or not he set that fire?

A   Yes, sir, he did.   He gave me a full confession.

Q   Did he tell you how and where he set it?

A   Yes, sir.

Q   And, what he started it with?

A   Under the stairwell with papers and a match.

Q   Did he tell you why he set it?

A   Yes, he was mad at the way; he was mad at the way he was living and he had been drinking.

Q   Where was the Defendant living at the time that he set that fire?

A   At the same hotel.

Q   The same hotel?

A   Yes, sir.

Q   After setting the fire what did his statement reflect that he did?

A   He went down and woke everybody up on the first and second floors and went out and pulled the alarm, went back in and tried to assist the firemen in getting the rest of the people out of the building.

N.T. at 77–78, 79.

As the majority stated in its opinion (quoting *Commonwealth v. Morris*, 493 Pa. 164, 176, 425 A.2d 715, 720, 721 (1981)), "a distinctive and unusual 'modus operandi' appears where 'crimes of the accused [are] so nearly identical in method as to earmark them as the handiwork of the accused'" and that "[t]he Commonwealth must show more than the other crimes are of the same class as the one for which the defendant is being tried." At 671–672. I conclude that the similarities between the New Jersey fire and the Pennsylvania fire show two crimes which are so nearly identical in method as to earmark them as the handiwork of the defendant. I also find that the remaining contentions of appellant, namely his confession should have been suppressed as a product of coercion and because of violation of the "six-hour rule" of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), are without merit. I would affirm the judgment of sentence.