J-S55001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENYELL WORRELL, | |
| Appellant | No. 3070 EDA 2012 |

Appeal from the Judgment of Sentence October 15, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011927-2010

BEFORE:  BOWES, SHOGAN, and OTT, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 07, 2014**

Kenyell Worrell appeals from the judgment of sentence of ten to twenty years imprisonment imposed by the trial court after a jury convicted him of forcible rape, involuntary deviate sexual intercourse, ("IDSI") sexual assault, and indecent assault.  We affirm.

The trial court comprehensively outlined the evidence adduced by the Commonwealth at trial:

> On August 25, 2010, the Complainant was walking in the area of 20th and Federal Streets at approximately 2 a.m.  The Complainant noticed the Defendant following her on a yellow bike.  Defendant approached and asked the Complainant what she was carrying in her bag.  She replied that she was carrying boots and would sell them for $10.00.  Defendant replied that he did not have money to purchase the boots for his girlfriend, but he had [crack cocaine] that he could give her in exchange for the boots.  Defendant instructed Complainant to cross the street to an empty field because he did not want the police to see the exchange.

The Complainant crossed the street and Defendant instructed her to get close to him near some bushes. When she refused and turned to walk away he told her that he was [joking] with her and she returned, in the belief that he would exchange the drugs for the boots. When the Complainant moved closer to Defendant, he grabbed her arm and raised his fist. The Complainant believed he was [joking] and asked if he was going to rape her. Defendant responded in the affirmative and restrained the Complainant by the arm, raised his fist, and pinned her down. Defendant penetrated the Complainant with his penis, both orally and vaginally. Defendant punched the Complainant in her face to stop her from yelling. Defendant then left on his bike and the Complainant left on foot. Within five minutes, the Complainant flagged down a police car operated by Officer Brandon Ruff. Officer Ruff and the Complainant drove through the area, to search for Defendant. The Complainant described Defendant as a black male wearing a red shirt and dark shorts with a full beard, riding a blue and yellow mountain bike. Defendant wasn't located and the Complainant was transported to her home. Officer Ruff continued to survey the immediate area and apprehended Defendant. Officer Ruff brought Defendant to the Complainant's home and she identified him without hesitation.

Trial Court Opinion, 7/18/13, at 2-3 (footnotes and citations to record omitted).

On appeal, Appellant presents these challenges:

1. Did not the lower court err in granting the Commonwealth's motion to present "other acts" evidence, as the non-propensity evidentiary purposes asserted by the Commonwealth for which the evidence might have been admitted were either not supported by the record or were outweighed by the potential prejudicial impact of the "other acts" evidence upon the jury?

2. Did not the court err in denying the defendant's motion to dismiss pursuant to Pa.R.Crim.P. 600 because more than 365 days of non-excludable and/or non-excusable time had elapsed for the Commonwealth to bring the defendant to trial and because the Commonwealth had not exercised due diligence in bringing the defendant to trial?

3. Should not this matter have been remanded by this Court for an evidentiary hearing involving after-discovered evidence pursuant to Pa.R.Crim.P. 720(c)?

Appellant's brief at 4.

We first address Appellant's Pa.R.Crim.P. 600 issue since, if meritorious, Appellant would be entitled to discharge, which would render the remaining two issues moot. We analyze the denial of a Rule 600 discharge motion pursuant to the following standard of review:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

**Commonwealth v. Armstrong**, 74 A.3d 228, 234 (Pa.Super. 2013).

Rule 600[1] requires a defendant to be tried within certain time constraints. "To determine whether dismissal is required under Rule 600, a court must first calculate the 'mechanical run date,' which is 365 days after the complaint was filed." **Commonwealth v. Goldman**, 70 A.3d 874, 879 (Pa.Super. 2013). Thereafter, an adjusted Rule 600 run date is computed,

_____

[1] On October 1, 2012, our Supreme Court ordered that, effective July 1, 2013, Rule 600 was rescinded and a new Rule 600 was adopted. **Commonwealth v. Brock**, 61 A.3d 1015, 1016 n.2 (Pa. 2013). The new rule reflects prevailing case law. Pa.R.Crim.P. 600, Comment. The events in question occurred prior to the alteration; therefore, we apply the former rule. **Brock**, **supra**.

and the defendant is entitled to discharge under Rule 600 only where trial started after the adjusted run date. *Id.* (Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time."). The adjusted run date is calculated by adding to the mechanical run date both excludable and excusable delay. *Id*. Excludable delay is delay caused by the defendant or his lawyer. *Id.* "Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence." *Id*. **See** former Rule 600(G). Excusable delay encompasses a wide variety of situations where the postponement of trial was outside of the Commonwealth's control. **Armstrong**, **supra**. Additionally, "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id*. at 236 (citation omitted).

Finally, when we evaluate a trial court's Rule 600 ruling, we remain mindful that the Rule has two purposes. It is designed not just to guard a defendant's speedy trial rights, but also to protect society's interest in prosecuting crime. When taking into account the latter consideration, we note that, "the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through

no fault of the Commonwealth." *Id*. at 235 (citation omitted). Thus, if "there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime." *Id*.

In this case, Appellant's mechanical run date was September 9, 2011. Trial commenced on June 19, 2012. Trial was originally set for June 3, 2011. Prior to trial, the Commonwealth filed a motion to permit the introduction of a prior bad of act of Appellant. On June 3, 2011, Appellant asked for a continuance to respond to the motion. That continuance was granted on June 13, 2011, the trial court took the Commonwealth's motion under advisement on July 1, 2011, and it scheduled trial for July 8, 2011. While Appellant suggests that this delay is attributable to the Commonwealth, we disagree. The Commonwealth did not exhibit bad faith in seeking to admit inculpatory evidence that required a court ruling as to admissibility. This result is confirmed by the fact that the Commonwealth's motion subsequently was granted and we affirm that ruling *infra*. Thus, the delay from June 3, 2011 to July 8, 2011 is excusable, resulting in 35 days of extension of the run date to October 14, 2011.

On July 8, 2011, trial could not proceed since the Commonwealth had not been able to obtain discovery from the hospital or the laboratory that was performing DNA testing. The district attorney stated that it had

- 5 -

subpoenaed the medical records three times, in September 2010, January 2011, and February 2011, and the hospital had yet to respond. N.T. Hearing, 7/8/11, at 3. The DNA laboratory also failed to forward the results of testing, and personnel from the laboratory told the district attorney that it would take another fourteen to eighteen weeks to obtain the results. *Id*. at 6. The court indicated that it would enter an order to obtain the hospital's compliance with the records request. *Id*. at 7. The laboratory's inability to provide prompt test results was precipitated by normal delay in the DNA testing process as well as the fact that the first DNA sample from Appellant was degraded and a second sample had to be procured. N.T. Hearing, 7/11/11, at 27-30. On July 11, 2011, the court granted a continuance, scheduled a trial for October 17, 2011, and issued a ruling that that time was excusable since trial could not be completed based upon the inability to obtain evidence from third-party sources.

Appellant takes umbrage with the trial court's grant of an extension of his run date for the time period from July 11, 2011, to October 17, 2011. However, the Commonwealth is not responsible, under Rule 600, for delay caused by a laboratory's failure to provide results from testing, and we have held that such delay constitutes excusable delay. ***Commonwealth v. Frye***, 909 A.2d 853 (Pa.Super. 2006). The Commonwealth does not control how long a laboratory test takes. Hence, the period from July 11, 2011 to October 17, 2011 was excusable. That means that the Rule 600 run date

was extended by ninety-eight days from October 14, 2011 to January 20, 2012.

The docket indicates that on October 17, 2011, both sides were ready to proceed to trial. On October 18, 2011, the trial court issued an order stating that, even though both sides were ready, the trial court was not available since it was in trial on another case. That order further provided that the case was re-listed for trial on December 12, 2011, that the date was the earliest possible date on its calendar and that the time was excusable and extended the run date. Contrary to Appellant's argument on this subject, any delay caused by the trial court constitutes excusable delay extending the run date. **Armstrong**, **supra**.[2] This ruling added fifty-six days of excusable delay to the run date and extended it to March 16, 2012.

The trial court then issued a continuance: 1) on December 12, 2011, scheduling trial for December 14, 2011; 2) on December 14, 2011, scheduling trial for January 9, 2012; and 3) on January 10, 2012, scheduling trial for June 11, 2012. In each instance, the order indicated that the court was in trial in another matter, that both sides were ready, that the next assigned trial date was the earliest one possible, and that the time extended

_____

[2] While Appellant lumps the Commonwealth and the judiciary together in analyzing his Rule 600 claim, these entities are distinct. It is well established under Rule 600 jurisprudence that when trial is delayed based upon judicial unavailability, such a postponement constitutes excusable delay since it is not within the Commonwealth's ability to control the trial court's docket.

the Rule 600 run date. The court continuances amount to 170 days of excusable delay, extending Appellant's adjusted run date by more than five months, into September 2012. Thus, Appellant's trial which commenced on June 19, 2012, was well within the time frame permitted under Rule 600. His request for dismissal under Rule 600 properly was denied.

Appellant next complains about the trial court's decision to permit the Commonwealth to present evidence about a prior incident that involved an attempted rape. He maintains that the proof in question violated the prohibition against introduction of prior bad acts. **See** Pa.R.E. 404(b).[3] Our Supreme Court has noted:

> Evidence of prior bad acts is inadmissible to prove character or to show conduct in conformity with that character. Such evidence is, however, admissible when offered to prove some

_____

[3] That rule provides:

**(b) Crimes, Wrongs or Other Acts.**

> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b).

other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. We have also recognized that prior bad acts evidence may be admissible as *res gestae* when relevant to furnish the complete story or context of events surrounding the crime.

***Commonwealth v. Weiss***, 81 A.3d 767, 798 (Pa. 2013). Thus, the prior-bad-acts proscription essentially applies only when that prior bad act is admitted to attempt to establish the defendant's predisposition to commit the crime in question, but such evidence is admissible where there is some legitimate reason for its introduction. ***Id***.

In this case, Appellant's defense was that the victim was a prostitute who consensually engaged in the sex in return for consideration. The trial court admitted into evidence the fact that in 2008, Appellant pled guilty to an attempted rape committed under circumstances similar to the one at bar. Specifically, the 2008 assault involved a middle-aged African American woman, and the victim herein was a middle-aged African American woman. Both crimes occurred after midnight, and Appellant grabbed the victims and told them that he planned to rape them. The other woman was able to escape after screaming and running down the sidewalk. In this case, Appellant managed to isolate his victim before informing her of his scheme. The crimes occurred within four blocks of each other in the same South Philadelphia neighborhood. The present rape occurred soon after Appellant was granted release from prison.

We affirm the trial court's conclusion that the 2008 attempted rape was admissible at trial herein. *Commonwealth v. Elliott*, 700 A.2d 1243 (Pa. 1997), *abrogated on other grounds*, *Commonwealth v. Freeman*, 827 A.2d 385, 400 (Pa. 2003), is instructive. In that case, the Commonwealth introduced evidence of three prior sexual assaults of other women, in part, to rebut the defendant's claim that he and the victim engaged in consensual sex and that her injuries were the result of an agreement to engage in rough sex. The Supreme Court rejected the defendant's argument that the prior assaults were improperly admitted. It noted that, due to similarities among the various assaults, they were admissible under the common scheme or plan exception to the prohibition against prior bad acts. It additionally observed that the evidence in question was properly admitted to rebut the defendant's position that the victim's injuries were the result of consensual rough sex.

In *Commonwealth v. Kjersgaard*, 419 A.2d 502 (Pa.Super. 1980), the defendant also complained that the court erred in admitting proof of a prior rape offense during his trial for the rape of a sixteen-year-old girl. The defendant's contention was that the victim had voluntarily gone to the defendant's apartment and consented to engage in intercourse. The *modus operandi* of the two assaults were similar, and we held that the prior offense was admissible to show a common scheme, plan or design as well as to "negate the defense of consent." *Id*. at 504; *see also Commonwealth v.*

*Rough*, 418 A.2d 605, 612 (Pa.Super. 1980) (defendant's prior sexual conduct and comments were properly admitted to "to rebut defense arguments that the victim consented to appellant's acts.").

In this case, the trial court properly ruled on the Commonwealth's request. The two sexual assaults shared many common characteristics and the prior attempted rape refuted Appellant's claim that the sexual intercourse at issue herein was a consensual transaction. Hence, we affirm.

Appellant's final position is that this Court should remand for a hearing on an after-discovered evidence claim. Pa.R.Crim.P. 720(C), entitled "after-discovered evidence" provides, "A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." The comment to the rule further delineates:

> Unlike ineffective counsel claims, which are the subject of *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), paragraph (C) requires that any claim of after-discovered evidence must be raised promptly after its discovery. Accordingly, after-discovered evidence discovered during the post-sentence stage must be raised promptly with the trial judge at the post-sentence stage; after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]

Pa.R.Crim.P. 720, comment. Hence, the issue was properly raised in this Court in the first instance.

Herein, Appellant avers that "subsequent to the record being sent to this Court on appeal, counsel received information regarding a witness whose testimony potentially constituted after-discovered evidence."

- 11 -

Appellant's brief at 42. Specifically, the unnamed individual purportedly observed the district attorney herein coaching the victim, who "was instructed on how to describe the alleged sexual assault of the complainant by the defendant." *Id*. at 44. The anonymous individual also supposedly told counsel that, when the complainant indicated that she did not want to testify, another man urged her to do so since it was his money that was at issue. Appellant does not ask us to rule on the claim, but suggests that a remand is appropriate so his entitlement to a new trial can be evaluated after a record is developed.

We conclude that Appellant's proffer is insufficient to warrant a remand.

> The four-prong test for awarding a new trial because of after-discovered evidence is well settled. The evidence: (1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict.

*Commonwealth v. Castro*, 93 A.3d 818, 821 n.7 (Pa. 2014).

While a defendant need not produce an affidavit from a witness to be entitled to a hearing on a after-discovered-evidence claim, *id.*, he must at least establish the proposed new evidence is producible and admissible. *Id*. at 825. Appellant's vague assertions herein are insufficient to meet the benchmarks necessary to warrant a new trial based upon after-discovered evidence. Appellant fails to name the witness, even though counsel purportedly investigated the matter. Appellant neglects to explain why he

could not have obtained the evidence prior to trial by exercising diligence. For example, if the unnamed witness is a close friend or relative, there would be no reason that the person's observations could not have been discovered at the time they were made.

Moreover, Appellant's proffer regarding the substance of the witness's testimony is insufficient to warrant a hearing. Even if the prosecutor was reviewing the victim's proposed testimony with her, and another person urged her to testify in court when she was not inclined to do so, this type of evidence would merely cast some doubt upon her credibility. Thus, it is considered impeachment evidence and is insufficient to warrant a new trial. *Commonwealth v. Trinidad*, 2014 WL 3672917, 4-5 (Pa.Super. 2014).

While Appellant says that the conversation between the prosecutor and the victim made it appear as if the "complainant did not actually experience" the events that the prosecutor was reviewing with her, Appellants' brief at 44, we note the following. Immediately after the sexual assault, the victim flagged down a police officer and reported the rape. Her initial description of the incident was consistent with her trial testimony. *See* Affidavit of Probable Cause, 9/2/10, at 2. After Appellant's preliminary hearing, a transcript of which is not included in the certified record, charges of rape, IDSI, sexual assault, indecent assault, and simple assault were all bound over for trial. This result from the preliminary hearing supports that

the victim's testimony at that proceeding also was consistent with her trial testimony.

Thus, if the testimony of Appellant's proposed witness is to the effect that the prosecutor was eliciting fabricated testimony from the victim that she was raped, then that proposed witness's testimony would have been impeached with the victim's two prior consistent statements about the events of the night in question. Additionally, Appellant's defense was that he had consensual sex with the victim, and his attempted rape of another woman under similar circumstances discredited this position. Hence, the testimony of Appellant's recently-discovered unnamed witness would not likely have produced a different verdict at trial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014

- 14 -